Allen R. HOWZE et ux., Appellants,

v.

SURETY CORPORATION OF AMERICA, Appellee.

No. 12697.

Court of Civil Appeals of Texas, Austin.

April 12, 1978.

Rehearing Denied May 3, 1978.

Thomas D. McDowell, Howard & McDowell, Corpus Christi, for appellants.

William L. Ehrle, Austin, for appellee.

SHANNON, Justice.

This appeal concerns coverage *vel non* of a "Mobile Home Dealer Bond" written pursuant to Tex.Rev.Civ.Stat.Ann. art. 5221f (Supp.1978), the Texas Mobile Homes Standards Act, hereafter usually referred to as the "Mobile Homes Standards Act."

Appellee, Surety Corporation of America, filed a declaratory judgment suit in the district court of Travis County. Appellee sought a determination that by the terms of its bond, it was not bound to pay a judgment obtained by appellants, Allen R. Howze and wife, Sue Howze, against appellee's principal. Appellants answered and filed a counterclaim predicated upon the judgment. After trial to the court, a take-nothing judgment was entered as to appellants' counterclaim. Further, the judgment declared that the surety company was not liable to appellants. We will affirm the judgment.

In February, 1976, appellants purchased a mobile home from R. L. Greer, doing business as Mobile Market Homes. As a down payment on the new mobile home, appellants "traded-in" their old mobile home. The old mobile home was encumbered with indebtedness. As part of the trade Greer agreed to assume that indebtedness. Contrary to his representation, Greer did *not* assume the indebtedness against the "trade-in" mobile home, and, in time, the lienholder made demand of appellants for payment in full.

Appellants sued Greer in the district court of Nueces County. The basis for suit was that Greer committed a "deceptive trade practice" by falsely representing that he would assume the outstanding indebtedness against the "trade-in" mobile home. Tex.Bus. & Com.Code Ann. § 17.46(b)(12) (Supp.1978). Appellants did not allege that Greer had violated any section of the Texas Mobile Homes Standards Act.

At the time of the representation by Greer to appellants, and as required by art. 5221f, Greer had in effect a "Mobile Home Dealer Bond." Appellee was surety and Greer was principal on the bond. Appellants did not make the surety company a party in their suit against Greer.

Greer made no appearance, and on June 25, 1976, the district court of Nueces County entered a default judgment against Greer in the sum of $42,126. In the judgment the court recited the following findings and conclusions:

"(1) That Plaintiffs are consumers as defined in Section 17.45(4), Texas Business and Commerce Code, Deceptive Trade Practices-Consumer Protection Act and Art. 5221f. Section 3(g), Texas Mobile Homes Standards Act.

"(2) That Defendant, R. L. Greer d/b/a Mobile Market Homes was and is a Dealer as defined in Art. 5221f, Texas Mobile Homes Standards Act, at all times pertinent to Plaintiffs' cause of action;

"(3) That Plaintiffs' cause of action is connected with the sale of a mobile home;

"(4) That Plaintiffs have been adversely affected and sustained actual damages in the amount of Thirteen Thousand Five Hundred Forty-two and 13/100 Dollars ($13,542.13); and

"(5) That Plaintiffs are entitled to three (3) times the amount of their actual damages and attorney's fees as provided by Section 17.50, Texas Business and Commerce Code."

Five days after the entry of the default judgment, appellants obtained a writ of execution, and on the day following, the deputy sheriff returned the writ unsatisfied. One day after the default judgment became final, appellants made demand upon the surety for payment of the judgment for the face amount of the bond, $25,000. The surety company refused to pay appellants and then filed the declaratory judgment suit.

The surety alleged that it was not bound by the default judgment. The surety also pleaded that it was not liable under the bond because Greer did not violate any applicable provision of the Texas Mobile Homes Standards Act. Appellants joined issue by its response that the surety was collaterally estopped to obtain declaratory relief. In addition, appellants alleged in their counterclaim that by the terms of the Texas Mobile Homes Standards Act, the surety was liable to them for the face amount of the bond. By the entry of the take-nothing judgment, the district court necessarily resolved both issues in the surety's favor.

The obligation of the surety is determined by the terms of the bond. The applicable part of the surety bond is hereafter set out:

". . . are firmly bound unto THE STATE OF TEXAS in the sum of $25,-000.00 dollars payable at Austin, Travis County, Texas, for the use by a consumer, the State, or any political subdivision thereof who establishes liability against a dealer for damages, penalties, or expenses, including reasonable attorney's fees, resulting from a cause of action connected with the sale or lease of a mobile home, and for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, successors and assigns, jointly and severally, firmly by these presents."

"NOW, THEREFORE, the CONDITION OF THIS OBLIGATION is such that the PRINCIPAL shall faithfully discharge all obligations, duties and responsibilities under Sections 4, 5, 6, 7, and paragraph (b) of Section 8, and all other applicable sections of Article 5221f, VACS, and all amendments thereto, and all applicable rules and regulations of the Commissioner of the Texas Department of Labor and Standards adopted to carry out the provisions of Article 5221f, as amended."

The surety contends that it was not bound by the default judgment entered in the suit between appellants and Greer because (1) it had no notice of the suit,[1] and (2) that Greer's acts were not covered by the Texas Mobile Homes Standards Act.

The legal effect of failure to give the surety notice of suit was discussed by this Court in *Browne v. French*, 22 S.W. 581, 583 (Tex.Civ.App.1893, no writ), wherein the Court said:

"The first question that we consider is, is the judgment of the Crane-Breed Man-

---

1. At the time appellants filed suit against Greer, the Texas Mobile Homes Standards Act did not require that notice of a claim be given the surety. The Act now requires that the surety be given notice. Tex.Rev.Civ.Stat.Ann. art. 5221f § 13(g).

ufacturing Company against French and the appellant conclusive against the appellees as sureties on the bond sued on in this case, they not being parties to the suit or notified of its pendency? The obligation created by the bond so executed to appellant was that the obligors should pay the debts of French & Browne, and hold the appellant harmless. It was not that they should be bound by any particular judgment, but simply a general promise to pay the debts. The general rule upon this subject may be stated that, when it appears from the terms of the obligation that the surety has contracted to become bound by a judgment that has been or may be rendered in an action against his principal, it is conclusive against him, although he was not a party to the suit in which the judgment was obtained; but in an undertaking, general in character, such as the bond sued upon in this case, the judgment obtained against the principal therein only creates a prima facie liability against the surety who was not made a party or given an opportunity to defend the suit in which the judgment was obtained. In such cases the judgment is not conclusive, and does not operate as an estoppel against the surety, and he will, when sought to be made liable therefor by the judgment creditors, be permitted to interpose any valid defense that would defeat the plaintiff's case existing at the time the judgment was obtained. . ."

In distinguishing between an agreement to be bound by a particular judgment and a general undertaking to pay debts the Texarkana Court in *United States Fidelity & Guaranty Co. v. Paulk*, 15 S.W.2d 100, 103–104 (Tex.Civ.App.1929, no writ), wrote:

". . . the appellees did not have notice of the former suit. The generally recognized rule, and about which there is no doubt, is that a final judgment of a competent tribunal is conclusive of all matters adjudicated as between the parties and their privies. This estoppel extends, of course, to every material allegation in the cause which was either ex-

pressly or by necessary implication in issue. In such case the judgment, upon proof of its rendition, becomes conclusive evidence against such parties. And the rule seems to be established that an indemnitor, although he does not appear in the suit, is not regarded as a stranger to the judgment, which, if obtained without fraud or collusion, is conclusive against him to the extent of the matters expressly determined by it, where such indemnitor expressly makes his liability to depend on litigation and stipulates that he will abide the result of the suit. 34 C.J. p. 1031; 14 R.C.L. p. 61; 2 Black on Judgments, 573; *National Surety Co. v. Love*, 105 Neb. 855, 182 N.W. 490, and other cases. He may set up and prove only defenses which were not directly determined in the first litigation. . ."

"Again, according to the weight of authority, as a general rule, where the indemnitor has not been notified of the prior suit and has not made his liability over depend expressly on the event of a litigation to which he was not a party and has not stipulated to abide the judgment of the suit, estoppel is not created by the judgment therein and such judgment does not become conclusive evidence of the ultimate liability over to the defendant therein. It is regarded as prima facie evidence of the fact of its rendition and the amount of damages. . . ."

In the case on appeal, the bond provides that the surety is bound to pay the obligee "for damages, penalties or expenses" resulting from a cause of action in connection with the sale or lease of a mobile home, the payment of which is conditioned upon the principal's violation of applicable provisions of the Texas Mobile Homes Standards Act. In our view, the surety did not agree in the bond to be bound by a particular judgment, but instead it agreed to a general undertaking to pay "for damages, penalties, or expenses" on account of claims or suits. Compare the surety's agreement in *Beneke v. Western Surety*, 536 S.W.2d 67 (Tex.Civ. App.1976, writ ref'd n.r.e.). Accordingly,

because the surety was not given notice of appellants' suit against the principal and because the surety did not agree in the bond to be bound by a particular judgment, estoppel was not created by the default judgment and such judgment is not conclusive of the liability of the surety. Instead, the default judgment is regarded only as *prima facie* evidence of the fact of its rendition and the amount of damages. *United States Fidelity & Guaranty Co. v. Paulk, supra.*

■ Appellee also asserts that the default judgment was not determinative of its liability under the bond because Greer's acts were not covered by the Mobile Homes Standards Act. Appellants respond, however, that by the terms of the Mobile Homes Standards Act a violation of that Act is not necessary to subject the surety to liability under the bond. Appellants argue, correctly, that the bond under consideration is a statutory bond. That being so, we agree with appellants that the Texas Mobile Home Standards Act is made a part of the bond, irrespective of the intent of the parties. *Globe Indemnity Co. v. Barnes,* 288 S.W. 121 (Tex.1926). To resolve the issue of the surety's liability under the bond, this Court, then, must necessarily construe the Mobile Homes Standards Act.

■ The first premise in appellants' argument is the general observation that the intent of the Mobile Home Standards Act was to protect consumers against unprincipled and dishonest mobile home purveyors. Appellants then narrow their argument, somewhat, by reference to language in Sec. 13(c), now Sec. 13(f) of the Act. Section 13(c) provided in part that the ". . . bond . . . shall be to the state for the use by a consumer . . . who establishes liability against a . . . dealer . . for damages, restitution, or expenses . . resulting from a cause of action connected with the sale or lease of a mobile home." Appellants remark that there are no words of limitation modifying the phrase "cause

of action." Likewise, appellants note that nowhere in Sec. 13 or any other provision of the Act is it stated that the "cause of action" must be based upon a violation of the Mobile Homes Standards Act. Based upon these observations, appellants' argument is that if a consumer obtains a judgment against a mobile home dealer, pursuant to the Deceptive Trade Practices Act, he may obtain satisfaction from the statutory bond, limited only by the proviso in Sec. 13(c) that the judgment resulted ". . . from a cause of action connected with the sale or lease of a mobile home."

The resolution of the problem requires an examination of the *entire* Mobile Homes Standards Act. Section 13(a) requires that all manufacturers, dealers and salespersons file a bond ". . . to insure compliance with the intent of *this Act.*" (Emphasis added) Prior to 1975, "this Act," the Mobile Homes Standards Act, made no reference to the Deceptive Trade Practices Act, although the latter became law in 1973. After 1975, however, the Mobile Home Standards Act was twice amended so that at the present time it now provides that any violation of *Sections 14 or 4*[2] of the Mobile Homes Standards Act ". . . is considered a deceptive trade practice . ." under Sec. 17.41 of the Business and Commerce Code. Art. 5221f § 17(d). Since a violation of Sec. 14 was made a deceptive trade practice, the consumer was afforded the remedies provided in § 17.50 of the Business and Commerce Code.

Section 14 provides, in general, that all mobile homes sold by a manufacturer or dealer to consumers shall be covered by a specified mobile home warranty. Section 17(d), in turn, makes the violation of the mobile home warranty a deceptive trade practice. Accordingly, the consumer who proves a violation of the mobile home warranty is entitled to obtain the relief afforded by Tex.Bus. & Comm.Code Ann. § 17.50 (Supp.1978). Appellants, however, in the Nueces County suit or in their counterclaim

---

**2.** At the time of the filing of appellants' suit, tive trade practice. only a violation of Sec. 14 constituted a deceptive trade practice.

in the Travis County suit, did not plead or prove that Greer violated a mobile home warranty provided by Section 14.

The judgment is affirmed.

Affirmed.