**Harold AUSTIN, Plaintiff-Respondent,**

**v.**

**MEHLVILLE R–9 SCHOOL DISTRICT and James Price, Dale Brooks, Robert Hanley, Helen Barrett, Robert Thill, and Richard Tisell, Members and Officers of the Board of Education of the Mehlville R–9 School District, Defendants-Appellants.**

**No. 59918.**

Supreme Court of Missouri,
En Banc.

April 14, 1978.
Rehearing Denied May 9, 1978.

George J. Bude, Clayton, for defendants-appellants.

Charles A. Werner, St. Louis, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Harold Austin, a teacher at Oakville Senior High School, Mehlville School District, filed a petition against the district and the individual officers and members of the board of education to enjoin defendants from transferring him from his teaching position at Oakville Senior High School for the 1976–1977 school year. An order to show cause issued. Defendants filed a return and an answer. Following an extensive hearing the trial chancellor found the issues for plaintiff and against defendants and issued a permanent injunction against transfer. The chancellor filed a formal opinion complete with findings of fact and conclusions of law.

The school district and board of education appeal, posing first the question whether the words of a striking teacher participating in a picket line in front of the school in the course of an illegal strike who, in support of the strike, in the presence of striking and nonstriking teachers and in the immediate presence of two assistant principals, refers to the assistant principals as "scabs," constitute free speech protected by federal or state constitutional provisions; second, whether the use of the term "scabs" under the circumstances constituted slanderous and insulting words tending to incite an immediate breach of the peace, so as to disentitle plaintiff to constitutional protection in the use of the term.

The motivation of the board of education in ordering the transfer is a matter of concern in determining the first question. Was it to punish plaintiff for exercising a constitutionally protected right of free speech, or was it a proper exercise of administrative discretion in the operation of the school system? The chancellor held that the board of education gave the wrong reason for transferring plaintiff; that the real reason for the board's action was to discipline and punish plaintiff (who was contented to teach at Oakville and did not wish to go elsewhere in the system) and for the chilling effect his transfer would have on other teachers (who would thereby be discouraged from speaking up and speaking out against the policies of the administration); that he had been disciplined and punished because "management" had been "affronted by an incivil remark of its jester," and for the substantial effect the transfer would have upon other teachers; that teachers "must not be sterilized for the sake [of] maintaining management immune from criticism and entrenched in control. Teachers must not be so muzzled that they cannot bark even though the law forbids them to bite," and that the transfer should be enjoined. The chancellor found that neither Mr. Jordan nor the board of education felt that the transfer was made because the school's management or operation, or the role played therein by plaintiff, would in any way be impaired by plaintiff continuing to teach at Oakville; that plaintiff's remark was disconnected from any school activity; that the reference to the assistant principals as scabs was literally true, and was meant as a jest, more to provoke amusement and maintain morale among plaintiff's fellow strikers than anything else; that there was no evidence that it could have any effect on discipline at the school or harmony between any of the teachers or between plaintiff and the two assistant principals; that plaintiff's transfer was ordered because he exercised his constitutional right of free speech.

A review of the record demonstrates that the chancellor's finding of fact that the motivation or true reason the board ordered the transfer was to discipline and punish plaintiff for exercising his constitutional right of free speech is against the overwhelming weight of the evidence.

The immediate circumstances surrounding the making of the remark shed light on

the question of motivation. As between striking and nonstriking teachers the situation was tense. The latter were concerned about their personal safety as they departed from the school building and went to their parked cars. When plaintiff applied the term "scabs" to assistant principals Lake and Fortune the latter were accompanying several of the nonstriking teachers, in effect escorting them, to their cars. Several of the striking teachers regarded the remark humorously, as a jest, but neither Lake nor Fortune considered the remark as having been made in a joking vein; they took it seriously. Plaintiff concedes they did not seem to take the remark as a jest. Fortune testified that plaintiff was looking straight at them when he made the remark; that there was "no levity" in the way the remark was made and no smile on plaintiff's face. Nor were the assistant principals smiling. Lake testified that plaintiff leaned forward as he made the remark, stepped into the area where Lake was, came toward him and converged to a point 4 to 6 feet away from Lake. Neither of the assistant principals made any verbal response, but Lake felt "anger and hostility." He turned, "whirled a little bit," "cocked his arm," and clenched his fist. Fortune intervened, reached for Lake's hand to move him away. "Better judgment prevailed" and Lake desisted from any attempt to use physical force. Neither of the assistant principals said anything to plaintiff or the several strikers backing him up, but Lake and Fortune promptly reported the facts to the principal, who testified that Lake and Fortune were upset.

The board of education acted upon the recommendation of Mr. Jack Jordan, Principal of Oakville Senior High School, contained in a memorandum prepared by Mr. Jordan and directed to his immediate superior, the director of secondary education, after hearing Mr. Jordan present the matter at a session of the board. The memorandum stated:

"DATE: April 19, 1976
TO: Mr. Arthur Voerg,
   Director of Secondary Education
FROM: Jack M. Jordan, Principal
   Oakville Senior High School
RE: To be placed in the personnel
   file of Mr. Harold Austin

It has been brought to my attention by my two assistant principals, Mr. Irl Lake and Mr. James Fortune, that they were confronted by Mr. Harold Austin on the date of Thursday, April 8, 1976, at approximately 2:45 p. m. He commented to my two assistant principals the following: 'Where do you scabs think you are going?'. It should be noted that neither Mr. Lake or Mr. Fortune responded in any way. Mr. Austin is quite aware of Mr. Lake and Mr. Fortune's management role in our school. This type of comment was completely out of line. Therefore, I recommend that consideration be given to transferring Mr. Harold Austin to another secondary school in the Mehlville School District for the beginning of the 1976–77 school year.

Respectfully,

Jack M. Jordan, Principal
Oakville Senior High School"

Contrary to the chancellor's finding that the transfer was not made for the effect the remark had upon the management or operation of the school system, or plaintiff's role therein, Mr. Jordan testified that although one reason for his recommendation was plaintiff's failure to seek out the two assistant principals and apologize to them, his "basic reason" was that plaintiff had put his two assistants in a "very bad position" relative to the faculty and administration of the school by making a statement like that; that it undermined the authority of the assistant principals, who were in supervisory positions; that "there has to be a certain amount of respect for authority * * * [a]nd when derogatory comments are made to people who are in positions of authority * * * it is a necessary time that action be taken," and that he did not want it to happen again; that there was one channel by which he could insure that it did not happen again as between plaintiff and the two assistants, without involving firing plaintiff or causing him loss of pay,

and that was to transfer him; that this occurrence could have evolved into something much more serious and regrettable— "something physical"; that he was "very concerned," especially on the second day of the strike, "because of some of the actions and talk on our campus," and some of the things people were doing to each other; that he did not intend his action as a disciplinary action, although it could have a punitive effect because plaintiff was "fond of his particular setting" and did not want to leave his present teaching post.

The testimony of Mr. Dale Brooks, the only member of the board of education who testified at the trial, also contradicts the court's findings of fact with respect to the effect of the statement on the management and operation of the school, and plaintiff's role therein. Mr. Brooks testified that plaintiff's remark had "a lot to do" with plaintiff's transfer, but "the recommendation from the administration had the whole bearing on it"; that the administration felt it would be "feasible" to make the transfer—a lateral move, without demotion—not principally because of the remark but because of the future relationship "like next year * * * with the administrators that were going to be present there to try to work with this gentleman under this animosity."

■ The overwhelming weight of the evidence on motivation establishes without question that the true reason for the board's transfer order was not to discipline or punish plaintiff because of plaintiff's exercise of the right of free speech, but rather that the remark, under the circumstances in which it was uttered and considering the effect it had, demonstrated disrespect for the authority of plaintiff's superiors, tended to undermine and disrupt the relationship between them, interfere with the management and operation of the Oakville Senior High School, and create animosity and the possibility of physical violence as between plaintiff and the assistant principals. In contrast with *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which the chancellor characterized as the leading case dealing with the right of a public school teacher to criticize policies of school authorities, the words used in this case were directed to persons with whom plaintiff would normally be in contact in the course of his daily work as a teacher; as a result of their utterance a serious question arose of maintaining discipline by his immediate superiors, and harmony among coworkers, and the close-working relationship between plaintiff and the principal (requiring personal loyalty and confidence) was involved. The remark bore a rational relationship to plaintiff's employment, contrary to the chancellor's finding that the remark was disconnected from any school activity. The action of the board in ordering plaintiff's transfer, taken for legitimate managerial reasons, constituted a proper exercise of administrative discretion in response to an actual rather than an anticipated problem. It is not the policy of the courts to intervene in the internal operation and management of the public school system in cases which do not directly and sharply involve basic constitutional rights.

In this view of the case we do not reach and need not decide the constitutional questions sought to be raised.

The judgment and decree ordering the issuance of a permanent injunction against transfer of plaintiff from Oakville Senior High School is reversed, and the cause is remanded with directions to dissolve the injunction and sustain the motion to dismiss the petition for injunction.

MORGAN, C. J., and BARDGETT, HENLEY, FINCH, RENDLEN and SEILER, JJ., concur.

DONNELLY, J., not sitting.