Allen R. HOWZE et ux., Petitioners,

v.

SURETY CORPORATION OF
AMERICA, Respondent.

No. B–7641.

Supreme Court of Texas.

April 25, 1979.

Rehearing Denied July 3, 1979

Howard & McDowell, Thomas D. McDowell, Corpus Christi, for petitioners.

Richard Cross, Houston, William L. Ehrle, Austin, for respondent.

GREENHILL, Chief Justice.

Surety Corporation of America ("Surety") originated this suit in Travis County seeking a declaratory judgment that it was not liable to Allen R. Howze and his wife ("Howze") on a bond it had covering a mobile home dealer with which Howze had dealt. Howze counter-claimed for the face amount of the bond. The trial court entered a take-nothing judgment against Howze. The Court of Civil Appeals affirmed the trial court's judgment holding: 1) that proper notice was not given to Surety; and 2) that Surety was only liable on its bond for violations of the Texas Mobile Homes Standards Act ("Act").[1] 564 S.W.2d 834 (1978). We reverse. Our holding is based upon the particular wording of the statute in question and its legislative history. As we interpret it, the statutory bond in question was intended to cover deceptive trade practices of mobile home dealers; and the bond was intended by the Legislature to cover particular judgments against such dealers rather than being a "general undertaking" bond. That being so, the surety was not entitled to notice of the suit against a mobile home dealer; and the surety was bound by the judgment against the dealer for its deceptive trade practices.

Howze purchased a mobile home from R. L. Greer who was doing business as Mobile Market Homes. As part of the down payment, Howze traded in an old mobile home. Greer agreed to assume all of Howze's indebtedness on the traded-in mobile home.

Although Greer took possession of Howze's mobile home, he did not assume his indebtedness as promised; and the lien holder made demands upon Howze to pay. Greer, in the meantime, sold the mobile home traded in by Howze. Howze then filed suit against Greer in Nueces County alleging a deceptive trade practice in that he falsely represented that he would assume the indebtedness of Howze.[2] Furthermore, Greer failed to deliver, as he had promised to do, the title on the new mobile home which Howze had just purchased. No violation of the Texas Mobile Homes Standards Act was alleged.

The trial court found that Mr. and Mrs. Howze were consumers as defined under the Deceptive Trade Practices Act[3] and that they were entitled, under the Deceptive Trade Practices Act, to three times their actual damages of $13,542.13, plus attorney's fees. The District Court of Nueces County entered a default judgment against Greer in the amount of $42,126.00. No appeal was taken from that judgment, and that judgment is final.

At the time of Greer's misrepresentation, he was bonded pursuant to the requirements of Article 5221f, the Texas Mobile Homes Standards Act. Greer was the principal on the bond, and Surety Corporation of America was the surety. Surety was not made a party to the lawsuit against Greer, and no notice was given to Surety prior to the rendering of the default judgment against Greer.

Five days after the default judgment, Howze obtained a writ of execution. It

---

1. Article 5221f. All references are to Vernon's Texas Revised Civil Statutes Annotated. All *emphases* are added unless otherwise noted.

2. Texas Business and Commercial Code Annotated art. 17.46(b)12.

3. Texas Business and Commercial Code Annotated art. 17.45(4).

was returned unsatisfied. Howze then made a demand on Surety for the face amount of the Bond, $25,000.00. Surety refused to pay and filed this declaratory judgment suit in Travis County. The basic questions which this Court must answer are: 1) was Surety entitled to notice of the proceeding against Greer; 2) what effect did the default judgment against Greer have upon Howze's counterclaim against Surety; and 3) was Greer's misrepresentation within the scope of the bond's coverage.

## A. *Was Notice to Surety Required?*

The Court of Civil Appeals held that the default judgment obtained by Howze against Greer was not binding upon Surety because it had no notice of the suit. Its opinion is based upon the distinction between "particular judgment bonds" and "general undertaking bonds" as delineated in *United States Fidelity & Guaranty Co. v. Paulk,* 15 S.W.2d 100 (Tex.Civ.App.—Texarkana 1929, no writ) and *Browne v. French,* 22 S.W. 581 (Tex.Civ.App.1893, no writ).

Both cases set out the general rule in Texas that when a surety agrees to be liable for a particular judgment, then no notice need be given. However, when a surety contracts to be generally liable for all the undertakings of the principal, the surety must be given notice and an opportunity to defend the case before it is bound by the judgment. The Court of Civil Appeals found that this was a general undertaking bond. We disagree.

The bond in the present case was not a general undertaking bond. It was an agreement defined by the Texas Mobile Homes Standards Act to be liable for a judgment against the principal. The Act, and even the bond itself, states:

[the principal and surety are] firmly bound unto THE STATE OF TEXAS in the sum of *$25,000.00* dollars payable at Austin, Travis County, Texas for the use by a consumer, the State, or any political subdivision thereof *who establishes liability* against a dealer for damages, penalties, or expenses  .   . . .

The Act and bond both state specifically that the surety is not liable until the State, political subdivision or consumer *establishes liability.*[4] It is implicit that one establishes liability by obtaining a judgment in a court of competent jurisdiction. A consumer can only make a claim upon the surety when he has obtained a judgment against the principal, or when he sues them together in the same suit. These bonds are, therefore, *judgment* bonds; and the surety is bound despite the fact that it was neither notified nor joined as a party.

It is interesting that soon after this suit had arisen, the Legislature amended the Act to provide for notice to be given by the Texas Department of Labor and Standards to the surety of any claim against the bond.[5] It is obvious that the Legislature, having created by statute a particular judgment bond which generally requires no notice, wished to provide for notice to the sureties and did so by amendment. Cases arising in the future will no doubt be governed by this statutory provision.

## B. *The Evidentiary Value of the Judgment*

Intermingled with the problem of the required notice is the question of what effect the default judgment against Greer has upon Howze's counterclaim against Surety. Surety claims that at best the default judgment is prima facie proof only of its own rendition. *See, e. g.,* RESTATEMENT OF SECURITY § 139(3) (1941)[6] and

4. Article 5221f(13)(f), formerly Article 5221f(13)(c).

5. Article 5221f(13)(g). See Acts 1977, 65th Legislature, ch. 139, p. 288.

6. Surety's reliance upon RESTATEMENT OF SECURITY § 139(3) is misplaced. As one can see from the following comment, the rule ex-

pressed in section 139(3) has no application when by contract (or in this case by statute) the surety has bound itself to answer for any judgment obtained against the principal:

The rules stated in Subsections (2) and (3) are not concerned with a situation in which the surety by his contract has bound himself in specific terms to answer for any judgment

*Monmouth Lumber Co. v. Indemnity Ins. Co.,* 21 N.J. 439, 122 A.2d 604 (1956). Howze claims that the default judgment should be conclusive proof or at least create a rebuttable presumption of Surety's liability. *See, e. g., Sauer v. Detroit Fidelity and Surety Co.,* 237 Mich. 697, ·213 N.W. 98, 51 A.L.R. 1485 (1927); 72 C.J.S. *Principal and Surety* § 261 at 706; and *First Mobile Home Corp. v. Little,* 298 So.2d 676 (Miss. 1974). There are other positions not necessary to list here. *See* Annotation, 59 A.L. R.2d 752.

Since this bond is a statutory bond, this Court does not need to announce a general rule applicable to all cases where a creditor obtains a default judgment against the principal and attempts to introduce the judgment against the surety. The terms of this Act (and subsequently of the bond) condition the liability of a mobile home surety upon the *establishment of liability* against the principal; i. e., upon a judgment. Therefore, under the provisions of this Act, a judgment which establishes liability against the principal resulting from a cause of action *connected with the sale or lease of a mobile home* is binding upon the surety, absent proof of fraud or collusion. There was none here.

### C. *The Extent of the Bond Coverage*

■ Surety claims that it is only liable on its bond for violation of the Texas Mobile Homes Standards Act, and cannot be held liable for a violation by its principal of only the Deceptive Trade Practices Act. The liability of a surety on its bond is normally determined by the language of the bond itself. *Harrison v. Barngrover,* 118 S.W.2d 415 (Tex.Civ.App.—Beaumont 1938, writ ref'd). In the present case the bond in pertinent part states:

> THAT WE, __Mobile Market Homes__, · · as
>            (Dealer)
>
> PRINCIPAL, and Surety Corporation of America
>            (Surety)

    which may be obtained by the creditor against the principal. In such a case proof of the judgment is by the terms of the surety's obligation all that the creditor needs to show as a condition of the surety's liability.

as SURETY, duly authorized and qualified to do business as a surety company in this State, are firmly bound unto THE STATE OF TEXAS in the sum of __$25,000.00__ dollars payable at Austin, Travis County, Texas, for the use by a consumer, the State, or any political subdivision thereof who establishes liability against a dealer for damages, penalties, or expenses, including reasonable attorney's fees, resulting from a cause of action connected with the sale or lease of a mobile home, and for the payment of which, well and truly to be made, we bind ourselves, · · · jointly and severally, firmly by these presents.

NOW, THEREFORE, the CONDITION OF THIS OBLIGATION is such that the PRINCIPAL shall faithfully discharge all obligations, duties and responsibilities under Sections 4, 5, 6, 7, and paragraph (b) of Section 8, and all other applicable sections of Article 5221f, VACS, and all amendments thereto, and all applicable rules and regulations of the Commissioner of the Texas Department of Labor and Standards adopted· to carry out the provisions of Article 5221f, as amended.

The first paragraph of the bond is taken from the Act itself. The second paragraph was recommended by the Texas Department of Labor and Standards.

■ We construe the bond as a whole and the intent of the Legislature in requiring it. It is a statutory bond; and as such, the Texas Mobile Homes Standards Act is made part of the bond and is controlling regardless of the bond's language. *Globe Indemnity Co. v. Barnes,* 288 S.W. 121 (Tex. Com.App.1926, judgmt adopted).

■ The Texas Mobile Homes Standards Act was first enacted in 1969. It was entitled: Uniform Standards Code for Mobile Homes. It was a limited act, passed to protect the consumer public by providing minimum standards for the manufacture and sale of mobile homes. It was amended in 1971 and in 1973. The 1971 amendments created the Performance Certification Board and dealt primarily with the inspection of mobile homes; they also changed the Act's name to the Mobile Homes Standards Act. Acts 1971, 62nd Legislature, ch. 896, p. 2765. The 1973 amendment added the sections dealing with "tie-down" stan-

RESTATEMENT OF SECURITY § 139(3), Comment d.

dards, and provisions for inspections, fees, and penalties. Acts 1973, 63rd Legislature, ch. 606, p. 1673.

The bonding provisions which are pertinent to this case were added in 1975. Acts 1975, 64th Legislature, ch. 674, p. 2036. In general the provisions require that each manufacturer, dealer and salesperson be bonded so as to insure compliance with the *intent of the Act.*[7] The bonding provisions were added as part of Senate Bill 397 which was authored by Senator Doggett and sponsored in the House by Representative Uher.[8] This bill added for the first time a declaration of purpose to the Act which states:

> . . . to improve the general welfare and safety of the citizens of this state. The legislature finds that mobile homes have become a primary housing resource of many of the citizens of the state; that a growing awareness exists that *many consumers are injured by unprincipled and dishonest members of the mobile home industry,* that current warranties are deficient, that existing means of remedying these injustices are inadequate and do not provide a viable means for protecting the consumer, and that it is the responsibility of the state to provide for the protection of its citizens through the imposition of certain regulations on the mobile home industry. In recognition of these findings, the legislature deems it necessary to expand various regulatory powers to deal with these problems. The legislature finds this to be the most economical and efficient means of dealing with this problem and serving the public interest. *Accordingly, this Act shall be liberally construed and applied to promote its underlying policies and purposes.*[9]

As stated above, section 13(a) requires bonds to be filed to insure *compliance with*

*the intent of this Act.* Furthermore, section 13(f) states quite broadly that the bonds are to cover any deceptive act or misrepresentation "connected with the sale or lease of a mobile home."[10]

Read together these provisions provide a guide as to how the Act should be interpreted:

1. The bonds should insure compliance with the intent of the Act.

2. The bonds cover any cause of action connected with the sale or lease of a mobile home.

3. One of the stated purposes of the Act is to protect consumers who are injured by unprincipled and dishonest members of mobile home industry.

4. The Act is to be liberally construed to promote its stated purposes.

In the present case the conclusion that coverage existed is inescapable. Howze was injured by an irresponsible mobile home dealer who, in connection with his purchase of a new mobile home, agreed to assume his liability for the "traded-in" mobile home, did not do so, and sold the traded-in mobile home to third parties. The dealer has since become unaccountable for his deceptive acts. This is precisely the situation which the Act was meant to cover, i. e., protecting the consumer from an irresponsible dealer. The language of the statute and its legislative history plainly indicate the intent that the bond was meant to cover deceptive acts such as the one perpetrated upon Howze.

It is clear to us that the Legislature not only was aware of, but intended to make these bonding provisions cover more than just a breach of warranty. The consumer remedies available were not helpful when the defendant-dealer was either insolvent or unaccountable. This was the situation

---

**7.** Article 5221f(13)(a).

**8.** Senate Bill 397 contained the 1975 amendments to the Act. References by name to "Senate Bill 397" or the "1975 amendments" are used interchangeably.

**9.** Article 5221f(2).

**10.** Article 5221f(13)(f), formerly Article 5221f(13)(c). In the current statute the wording is to the effect that the bonds cover any act "connected with the sale or lease-purchase of a mobile home."

that the Legislature sought to cure by requiring bonds. Our conclusion is that these provisions are intended to cover deceptive acts and misrepresentations *connected with the sale or lease of a mobile home,* as the Act says, when these amounted to violations of the Texas Deceptive Trade Practices Act.

We, therefore, reverse the judgments of the trial court and Court of Civil Appeals and render judgment that Surety is liable to Howze for the face amount of the bond.

## ON MOTION FOR REHEARING

■ The motion for rehearing of Allen R. Howze is granted. Howze specifically pleaded for pre-judgment interest in his counterclaim against Surety. This Court has held that pre-judgment interest is recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment. *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth,* 578 S.W.2d 109 (Tex.1979); and *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 95–96 (Tex.1976).

Howze had a judgment against the mobile home dealer far in excess of the amount of Surety's bond. He made a demand to Surety for payment of the face amount of the bond on July 28, 1976. An ascertainable amount was thus due and owing to Howze from July 28, 1976.

The judgment of this Court is reformed to include interest at a rate of six per cent from that date until June 29, 1977.

The motion for rehearing of Surety Corporation of America is overruled.