OLD REPUBLIC SURETY
COMPANY, Appellant,

v.

BONHAM STATE BANK, Appellee.

No. 06–04–00105–CV.

Court of Appeals of Texas,
Texarkana.

Submitted July 13, 2005.

Decided Aug. 19, 2005.

Aaron Z. Tobin, G. Dennis Sullivan, Sullivan & Holston, Dallas, for appellant.

Graham C. Winegeart, William Riley Nix Jr, Nix & Winegeart, PC, Sherman, Millard O. Anderson, Jr., McKinney, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Old Republic Surety Company appeals the granting of Bonham State Bank's motion for summary judgment concerning its claim for damages under a motor vehicle dealer bond. The Bank alleged that Lee Cadenhead, d/b/a Victory Auto Sales, had breached a statutory bond condition. Because Cadenhead had filed for bankruptcy, the Bank obtained an agreed lift of the bankruptcy stay and then obtained a default judgment that Victory had violated a statutory bond condition. The Bank presented Old Republic with its judgment as a claim on the bond. When Old Republic denied the claim, the Bank sued for damages under the bond. The trial court granted the Bank's motion for summary judgment. For reasons stated below, we reverse the decision of the trial court and remand the case for further proceedings.

Old Republic raises four issues on appeal. It argues that the trial court erred (1) by granting summary judgment when a genuine issue of material fact existed concerning its liability under the bond; (2) in overruling its objections to the Bank's summary judgment evidence because the affidavit of the Bank's president was conclusory, hearsay, and not the best evidence of the alleged transactions; (3) by granting the summary judgment, because a genuine issue of material fact existed concerning whether the agreed judgment altered the terms of the surety bond; and (4) in awarding attorney's fees, causing the total award to exceed the face value of the surety bond.

A licensed car dealer must provide the Texas Department of Transportation with a $25,000.00 surety bond or similar securi-

ty. TEX. TRANSP. CODE ANN. § 503.033(a) (Vernon 1999). Section 503.033 provides:

The surety bond must be:

(1) in a form approved by the attorney general;

(2) conditioned on:

(A) the payment by the applicant of all valid bank drafts, including checks, drawn by the applicant to buy motor vehicles; and

(B) the transfer by the applicant of good title to each motor vehicle the applicant offers for sale.

TEX. TRANSP. CODE ANN. § 503.033(b) (Vernon 1999). Those statutory conditions are incorporated into the bond at issue in this appeal. Recovery against the surety bond is authorized if the claimant obtains a judgment against the dealer assessing damages based on an act or omission on which the bond is conditioned. TEX. TRANSP. CODE ANN. § 503.033(d) (Vernon 1999).

■ Before we can address the issues raised by Old Republic, we must first determine the effect of the default judgment in the lawsuit against the principal. The default judgment is conclusive proof of liability unless there is evidence of fraud, collusion, or that the judgment altered the terms of the bond. We must therefore examine whether there is evidence of fraud or collusion, or whether the default judgment altered the terms of the bond. Because we find there is a fact issue concerning whether the default judgment altered the terms of the bond, the trial court erred in granting the Bank's motion for summary judgment.

### Factual Background

The Bank provided Cadenhead with credit to purchase automobiles for Victory's inventory, and in that connection held a security interest on the automobile inventory. On May 13, 2002, Cadenhead signed a promissory note for $100,000.00 plus variable interest, which was secured by a certificate of deposit and Victory's inventory. When Cadenhead defaulted on the note, the Bank began liquidating its collateral, including the automobile inventory.

On or about February 19, 2003, Cadenhead filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. The Bank requested the bankruptcy court lift the automatic stay under 11 U.S.C. § 362 so that it could continue liquidation of its security interest and pursue a bond claim against Old Republic. On June 13, 2003, the bankruptcy court granted an agreed order to lift the stay. On August 15, 2003, the Bank obtained a default judgment against Cadenhead. Following the default judgment, the Bank requested Old Republic pay its claim under the bond, and Old Republic denied liability. The trial court granted the Bank's motion for summary judgment.

### Standard of Review

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). The movant has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.; City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex. App.-Texarkana 1989, no writ). Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant to present evidence raising a fact issue that would preclude summary judgment. *Stevens v. State Farm Fire &*

Cas. Co., 929 S.W.2d 665, 669 (Tex.App.-Texarkana 1996, writ denied). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999).

### The Evidentiary Value of the Judgment

Old Republic argues that the default judgment is only prima facie evidence of liability and that the Bank is still required to prove the principal violated a condition of the bond despite the judgment against the principal.

■■■ Whether a default judgment is conclusive of the surety's liability or only prima facie evidence depends on what type of bond is at issue. A general undertaking bond only creates a prima facie liability against the surety who was not made a party or given an opportunity to defend the underlying suit, and the surety will be permitted to assert any valid defense which the principal could have asserted. *Howze v. Surety Corp. of Am.*, 584 S.W.2d 263, 265 (Tex.1979). However, if the bond is a judgment bond, the Texas Supreme Court has held that a surety is bound by the default judgment against the principal even if the surety did not have notice of the prior suit against the principal absent proof of collusion or fraud.[1] "A judgment bond is one in which the surety agrees to be liable for a judgment based on a specific statutory violation covered by the bond." *Lawyers Sur. Corp. v. Riverbend Bank, N.A.*, 966 S.W.2d 182, 188 (Tex.App.-Fort Worth 1998, no pet.); *see Howze*, 584 S.W.2d at 265–66. A surety is liable under a motor vehicle bond if a judgment is obtained against the principal based on a condition of the bond. A motor vehicle bond under Section 503.033 is clearly a judgment bond. *See Riverbend Bank, N.A.*, 966 S.W.2d at 188.

We note that in *Arcadia Financial* and *MRD Investments* the Fourteenth District Court of Appeals held that a default judgment against a principal concerning a motor vehicle bond is only prima facie evidence of liability and that the surety is entitled to make any valid defense the principal could have asserted. *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 726 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Gramercy Ins. Co. v. Arcadia Fin. Ltd.*, 32 S.W.3d 402, 406–07 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Because the bond at issue is a judgment bond, we are constrained to follow the holding of the Texas Supreme Court.[2] Ab-

---

1. *Howze*, 584 S.W.2d at 265–66. *Howze* concerned a claim on a bond issued under the Texas Mobile Homes Standards Act. The Texas Supreme Court rejected that the bond was a general undertaking bond because "[t]he terms of this Act (and subsequently of the bond) condition the liability of a mobile home surety upon the *establishment of liability* against the principal; i.e., upon a judgment." *Id.* at 266.

2. According to Old Republic, *Arcadia* is consistent with *Howze*. At oral argument, Old Republic noted that *Arcadia* cited *Browne v. French*, 3 Tex.Civ.App. 445, 22 S.W. 581, 583–84 (Tex.Civ.App. 1893, no writ), for the prop-

osition that the surety could assert any valid defense and that *Browne* was also cited by the Texas Supreme Court in *Howze*. *See Arcadia Fin. Ltd.*, 32 S.W.3d at 406–07. We disagree that *Arcadia* is consistent with *Howze*. *Howze* noted the court of appeals' judgment was "based upon the distinction between 'particular judgment bonds' and 'general undertaking bonds' as delineated in *United States Fidelity & Guaranty Co. v. Paulk*, 15 S.W.2d 100 (Tex.Civ.App.Texarkana 1929, no writ), and *Browne v. French*, 3 Tex.Civ.App. 445, 22 S.W. 581 (1893, no writ)." *Howze*, 584 S.W.2d at 265. First, *Browne* concerned a general undertaking bond. *See Browne*, 22 S.W. at 581. Second, *Browne* announced the

sent evidence of fraud or collusion, the surety is bound by the underlying judgment and is prohibited from asserting any defenses. *Riverbend Bank, N.A.*, 966 S.W.2d at 188; *see Howze*, 584 S.W.2d at 266; *Old Republic Sur. Co. v. Reyes*, No. 05–01–01881–CV, 2002 WL 1772976, at *2 2002 Tex.App. LEXIS 5649, at *6–7 (Tex. App.-Dallas Aug. 2, 2002, pet. denied) (not designated for publication).

■ Section 503.003(d), however, requires the judgment to be based on a violation of a condition of the bond. In *Riverbend*, the Fort Worth Court of Appeals distinguished *Howze* by holding that a surety can raise the issue of whether the underlying judgment altered the terms of a bond. *Riverbend Bank, N.A.*, 966 S.W.2d at 188 (holding that the agreed judgment in that case modified the terms of the bond); *see Reyes*, 2002 WL 1772976, at **——, 2002 Tex.App. LEXIS 5649, at *6–7. Although a surety cannot relitigate the underlying lawsuit or assert any defenses that might have defeated the principal's liability, we agree with the Fort Worth Court of Appeals that a surety can raise the issue of whether the underlying judgment altered the terms of the bond. Such a holding is consistent with *Howze* because the underlying suit is not being relitigated. If the underlying suit found liability based on a different theory than the conditions of the act, it is not a judgment which is based on an act or omission on which the bond is conditioned. *See Riverbend Bank, N.A.*, 966 S.W.2d at 188; *see also* TEX. TRANSP. CODE ANN. § 503.033(d).

Therefore, unless there is evidence of fraud or collusion, the surety is bound by the underlying judgment. However, if the judgment altered the terms of the agreement, the judgment is not a judgment creating liability based on the bond and it is not conclusive of liability.

### There are Genuine Issues of Material Fact Concerning Whether the Default Judgment Altered the Terms of the Bond

■ In its first and third points of error, Old Republic argues that there are genuine issues of material fact precluding summary judgment. According to Old Republic, the default judgment altered the terms of the bond and therefore it is not bound by the default judgment. In addition, Old Republic argues there are genuine issues of material fact concerning whether the Bank has proved facts sufficient to create liability under the bond. Old Republic argues that the Bank has proven that Victory failed to repay its loan

identical rule for judgment bonds as the Texas Supreme Court relied on in *Howze*—a judgment is conclusive of the surety's liability. The Austin Court of Civil Appeals stated in *Browne*:

> The general rule upon this subject may be stated that, when it appears from the terms of the obligation that the surety has *contracted to become bound by a judgment* that has been or may be rendered in an action against his principal, it is *conclusive against him*, although he was not a party to the suit in which the judgment was obtained; but in an undertaking, general in character, such as the bond sued upon in this case, the judgment obtained against the principal therein only creates a prima facie liability against the surety who was not made a party or given an opportunity to defend the suit in which the judgment was obtained. In such cases the judgment is not conclusive, and does not operate as an estoppel against the surety, and he will, when sought to be made liable therefor by the judgment creditors, be permitted to interpose any valid defense that would defeat the plaintiff's case existing at the time the judgment was obtained.

*Browne*, 22 S.W. at 582–84 (emphasis added); *see United States Fid. & Guar. Co. v. Paulk*, 15 S.W.2d 100, 103–05 (Tex.Civ.App.-Texarkana 1929, no writ).

obligations, which does not create liability under a motor vehicle bond.

■ As the Bank correctly asserts, recovery on a motor vehicle bond is not limited to consumers. *See Arcadia Fin. Ltd.*, 32 S.W.3d at 406–07. Old Republic argues there is no evidence the Bank ever purchased a motor vehicle from Cadenhead or ever sold a motor vehicle to Cadenhead. The Bank responds that the statute does not limit its application to a direct consumer or purchaser of a motor vehicle. Section 503.033 allows "any 'person' to recover against a surety bond if that person obtains a judgment against a licensed motor vehicle dealer 'based on an act or omission on which the bond is conditioned.'" *Gramercy Ins. Co. v. Auction Fin. Program, Inc.*, 52 S.W.3d 360, 367 (Tex.App.-Dallas 2001, pet. denied); *Arcadia Fin. Ltd.*, 32 S.W.3d at 406–07. The main question, though, is whether the Bank obtained a judgment based on an act or omission on which the bond is conditioned. While the statute is not limited to consumers, the plaintiff must have sustained his or her injuries in connection with the sale or purchase of a motor vehicle.

■ One of the two conditions giving rise to liability under the bond is the failure to honor a bank draft for the purchase of an automobile. The failure to repay a loan does not involve the sale of a motor vehicle and is, thus, not a transaction that is subject to liability under the bond. *See MRD Invs., Inc.*, 47 S.W.3d at 726; *Riverbend Bank, N.A.*, 966 S.W.2d at 186–87. The bank draft must have been issued for the purchase of a vehicle. In this case, the Bank provided no summary judgment evidence that Victory failed to honor a bank draft. The facts of this case are nearly identical to *Riverbend* and *MRD*. In *Riverbend*, the Fort Worth Court of Appeals held that the surety com-

pany was not liable on the motor vehicle bond when the car dealer defaulted on his loan secured by the car dealer's inventory. *Riverbend Bank, N.A.*, 966 S.W.2d at 188. The court stated:

> A "note" and a "draft" are not interchangeable legal equivalents; they are two different types of negotiable instruments. A note is a written *promise* to pay money signed by the person undertaking that promise. *See* Tex. Bus. & Com.Code Ann. §§ 3.103(a)(9), 3.104(a), (e). A draft is a written *order* to pay money signed by the person giving the instruction. *See id.* §§ 3.103(a)(6), 3.104(e).

*Id.* at 187. The court interpreted the term "'payment of valid bank drafts' . . . to mean bank drafts for which a car dealer has sufficient funds at its disposal so that the drawee bank will honor them." *Id.* at 186. If the checks are not tendered to purchase a motor vehicle but rather to repay a loan, the surety is not liable. *Auction Fin. Program, Inc.*, 52 S.W.3d at 364; *MRD Invs., Inc.*, 47 S.W.3d at 727. The second condition of liability is the failure to transfer good title in connection with the sale of an automobile. Tex. Transp. Code Ann. § 503.033(b); *Arcadia Fin. Ltd.*, 32 S.W.3d at 407.

The summary judgment evidence filed by the parties consists of the following: the affidavit of Allen Sanderson, president of Bonham State Bank; the affidavit of Lisa Frasier, a "Claims Supervisor/Adjuster" for Old Republic; a transcript of the hearing concerning the default judgment; the agreed motion to lift the bankruptcy stay; responses to the Bank's requests for admissions; and the default judgment. When viewed in a light most favorable to the nonmovant, a fact issue exists concerning whether the default judgment altered the terms of the bond.

The only evidence that Victory violated the conditions of the bond is the default judgment and legal conclusions in the affidavit of Sanderson. The default judgment does provide that Victory failed to pay all valid bank drafts and failed to transfer good title for all vehicles it sold. The default judgment states:

> [A]ll averments contained in the Plaintiff's Original Petition shall be deemed admitted, including that there exists a valid, fully-proved promissory note under which Defendant is indebted to Plaintiff, that Defendant is in default of the terms of the Note due to his failure to make payments when due, to pay all valid bank drafts, and to transfer good title to each motor vehicle that Defendant sold, and that the amounts requested are due, owing, and unpaid.

We note, however, that the default judgment does not state whether the failure to pay all bank drafts was in connection with the purchase of an automobile. It does provide, however, that Victory failed to transfer good title for each motor vehicle sold. Therefore, the face of the default judgment indicates that one of the two conditions of the bond has been violated.

The Bank and Old Republic introduced conflicting affidavits. Sanderson stated in his summary judgment affidavit in pertinent part as follows:

> I know and can testify that on May 13, 2002, Victory executed and delivered to the bank a promissory note in the original principal amount of $100,000.00 ("the note") secured by the pledge of Victory's automobile inventory. In connection with this credit arrangement, Victory was obligated to pay all valid bank drafts and transfer good title to motor vehicles that it sold. Victory failed to perform these obligations and failed to pay amounts due on the note. As a result, the bank was damaged in the amount of $83,830.12....

In response, Old Republic filed an affidavit by Frasier. Frasier's affidavit states in pertinent part:

> Pursuant to state law, the Bond is conditioned on the payment of all valid bank drafts for the purchase of a motor vehicle and the transfer of good title for the sale of a motor vehicle. Plaintiff, Bonham State Bank made a claim on the bond that ORSC denied because the claim was not covered by a condition of the Bond.

Because the affidavits of Frasier and Sanderson consist mainly of legal conclusions, neither serves to resolve whether Victory violated either of the statutory bond conditions.[3]

There is more than a scintilla of evidence that the underlying judgment may have altered the terms of the bond. The motion to lift the stay provides that Victory sold vehicles out of trust and in bad

---

3. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex.App.-Texarkana 2000, no pet.). We note that a conclusory statement can be either a legal conclusion or a factual conclusion. Although logical conclusions based on stated underlying facts are permissible, legal conclusions are improper. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Legal conclusions reduce to a legal issue a matter that should be resolved by relying on facts. *Id.* "Statements of legal conclusions amount to little more than the witness choosing sides on the outcome of the case." *Id.* An affidavit must allege specific facts of a nature that can be effectively countered by opposing evidence. *Chhim v. Univ. of Houston*, 76 S.W.3d 210, 216 (Tex.App.-Texarkana 2002, pet. denied). "[A]ffidavits containing conclusory statements unsupported by facts are not competent summary judgment proof." *Skelton v. Comm'n for Lawyer Discipline*, 56 S.W.3d 687, 692 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

faith. As discussed above, the failure to repay a loan is not sufficient to violate either of the conditions of the bond. The motion to lift the bankruptcy stay provides more than a scintilla of evidence that the default judgment may have altered the terms of the bond. The motion provides as follows:

As above referenced, Movant has a lien on Debtors' [sic] new and used car inventory. It has come to Movant's attention that Debtor has sold many of the cars upon which Movant has a lien to third parties, without remitting the proceeds of sale to Movant. This constitutes bad faith, and accordingly cause exists for lifting the automatic stay.

This is more than a scintilla of evidence that the Bank's damages resulted from the failure to repay a loan, rather than a failure to pay all valid bank drafts or transfer good title in connection with the sale or purchase of an automobile. Further, the default judgment provides that the Bank sustained damages in the amount of $83,830.12. This amount is identical to the amount outstanding on the loan. In the Bank's original petition in the suit against Victory, the Bank alleged that the amount of the unpaid balance on Victory's note was $83,830.12. While this evidence is not much more than a scintilla, it does create a fact issue as to whether the default judgment altered the terms of the bond.

The Bank relies on *Auction Finance Program* and *Arcadia Financial* in support of its argument. The current case is distinguishable because the Bank did not have a lien against any specific car or cars, but rather against Victory's inventory in general. Further, the Bank has failed to show that Victory failed to pay valid bank drafts in connection with the purchase of an automobile. The Bank alleges that Vic-

tory transferred title to vehicles secured by a lien and failed to forward the proceeds to the Bank. *Arcadia* is distinguishable because the bank in that case had obtained an assignment from the purchaser of the automobile in return for a release on the lien. *Arcadia Fin. Ltd.*, 32 S.W.3d at 406–07. This case is clearly distinguishable from *Auction Finance Program* because in that case evidence was introduced that the motor vehicle dealer failed to pay valid bank drafts issued to purchase motor vehicles. *Auction Fin. Program, Inc.*, 52 S.W.3d at 369. In this case, there is no evidence that Victory failed to pay valid bank drafts other than the conclusory statements of Sanderson and the default judgment, and neither piece of evidence provides that these checks were for the purchase of an automobile. There is no evidence that the Bank has obtained an assignment in this case, and there is a fact issue concerning whether its damages resulted from the failure to transfer good title in connection with the sale of an automobile or simply resulted from the failure to repay a loan.

 Old Republic argues there is also evidence of fraud or collusion. Old Republic contends that Victory agreed to the default judgment and therefore colluded with the Bank. In support of its argument, Old Republic filed the transcript of the default judgment hearing. According to the transcript, the Bank's attorney informed the court in an unsworn statement that Victory had agreed to the entry of the default judgment. The transcript provides as follows: "This debtor has been in bankruptcy, and as part of the termination of the automatic stay, they agreed to the entry of this judgment." However, the transcript is not proper summary judgment evidence.[4] Therefore, the only evi-

4. The transcript consists entirely of unsworn statements and contains no certification.

dence in the record that Victory agreed to the entry of a default judgment is the agreed motion to lift the automatic bankruptcy stay. Further, an agreement to a judgment does not necessarily indicate that the parties colluded, absent additional evidence. There is less than a scintilla of evidence of fraud or collusion.

After taking as true all evidence favorable to the nonmovant and indulging every reasonable inference or doubt in the nonmovant's favor, the Bank has failed to show that no genuine issues of material fact exist concerning whether the underlying judgment altered the terms of the bond. Thus, the trial court erred in granting the Bank's motion for summary judgment. Because this issue is dispositive, it is not necessary to answer the remaining issues raised by Old Republic.

## Conclusion

Unless there is evidence of fraud, collusion, or that the default judgment altered the terms of the bond, the default judgment against Victory is conclusive of the liability of Old Republic. A genuine issue of material fact exists, however, concerning whether the default judgment altered the terms of the bond. Therefore, the trial court erred in granting the Bank's motion for summary judgment.

We reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

Court records, including trial testimony from other cases, are acceptable summary judgment evidence. *Mowbray v. Avery*, 76 S.W.3d 663, 689 (Tex.App.-Corpus Christi 2002, pet. denied); *Murillo v. Valley Coca–Cola Bottling Co.*, 895 S.W.2d 758, 762 (Tex.App.-Corpus Christi 1995, no writ). However, the testimony must set forth facts that would be admissible at trial and must be certified or attested under oath as authentic. *Murillo*, 895 S.W.2d at 762. "Generally, a court may take judicial notice of records of its own or another court's records (such as in the habeas corpus case) when they are provided by the proponent, however, this does not relieve the proponent from the responsibility of providing them to the court *in a form acceptable for summary judgment proceedings*, i.e. either sworn to or certified." *Mowbray*, 76 S.W.3d at 689. We note, though, that the transcript at issue is not trial testimony, but rather only unsworn statements by the Bank's attorney. The general rule is that an attorney's statements must be under oath to constitute evidence, but such error may be waived by the failure to object when the opponent knew or should have known an objection was required. *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 338 (Tex. App.-Texarkana 2004, pet. denied). In this case, however, there was not an opponent at the default judgment hearing who could have objected and there is no indication the Bank's attorney intended for his statement to be evidence. Although the Bank failed to object when Old Republic introduced the transcript, the defect goes to the substance of the evidence rather than the form. Therefore, we conclude that the uncertified trial transcript of unsworn statements is not admissible summary judgment evidence. We note that the default judgment and the agreed motion to lift the automatic stay were not certified either, but the lack of certification goes to the form of these documents rather than the substance, and an objection was required at the trial level. *See Mowbray*, 76 S.W.3d at 689.