**LAWYERS SURETY CORPORATION,**
Appellant,

v.

**ROYAL CHEVROLET, INC., Appellee.**

No. 6–92–050–CV.

Court of Appeals of Texas,
Texarkana.

Jan. 12, 1993.

Rehearings Overruled Feb. 2
and Feb. 23, 1993.

 

Shannon Tuckett, Lavender, Rochelle, Barnette & Dickerson, Texarkana, Robert Reed, Russell, Hoffman & Reed, San Antonio, for appellant.

Deborah J. Race, Tyler, Errol N. Friedman, Friedman & Hooper, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Lawyers Surety Corporation appeals a judgment in favor of Royal Chevro-

let, Inc., on causes of action based on Lawyers Surety's denial of a claim Royal Chevrolet made on a bond issued by Lawyers Surety. The primary issues on appeal are whether the term "bank draft" includes the term "check," whether pleadings or evidence supports the verdict on which the judgment was based, and the propriety of the amount of the damages awarded by the court.[1] We conclude that, for the purposes of statutory motor vehicle dealers' bonds, the term bank drafts includes checks. We further conclude that the pleadings and evidence support the jury's findings and that damages were properly awarded. Accordingly, we affirm.

Don Lancaster, doing business as Lancaster Motors, purchased wholesale a number of used cars from Royal Chevrolet. He paid for these cars with checks he wrote, which were returned for insufficient funds. When Lancaster did not cover the bad checks, Royal Chevrolet sued him and recovered a judgment in excess of $25,000.00.

A car dealer is required to post a bond before receiving a dealer's license. The statute containing this requirement provides that:

> In addition to other requirements provided by law, the Department may not issue or renew a general distinguishing number as a motor vehicle dealer to an appli-cant until the applicant shows proof satisfactory to the Department that the applicant has purchased a properly executed surety bond in the amount of $25,000 with good and sufficient surety approved by the Department. *The bond* shall be approved as to form by the attorney general and *shall be conditioned on the applicant's payment of all valid bank drafts* drawn by the applicant for the purchase of motor vehicles.... Recovery against the bond or other security may be made by a person who obtains a judgment against a dealer assessing damages for an act or omission on which the bond is conditioned....

(Emphasis added). Act of May 15, 1985, 69th Leg., R.S., ch. 465, § 2, 1985 Tex.Gen. Laws 1633–34, *amended by* Act of May 21, 1991, 72nd Leg., R.S., ch. 915, § 2, 1991 Tex.Gen.Laws 3255.[2] Lancaster had posted such a bond. Royal Chevrolet demanded that Lawyers Surety, the surety on Lancaster's $25,000.00 car dealer's bond, pay pursuant to the bond. Lawyers Surety denied the claim because it was not a surety for Lancaster's bad checks, only for his bad bank drafts.

After Lawyers Surety denied its claim, Royal Chevrolet sued, asserting violations of the Deceptive Trade Practices–Consumer Protection Act[3] and the Unfair Claim

---

**1.** Lawyers Surety also complains that the court erred in denying its motion for summary judgment. The denial of a motion for summary judgment ordinarily is not appealable. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). It further complains that the court erred in overruling its motion for directed verdict, urging that the proper remedy for that error is that we render a take-nothing judgment. It cites Tex. R.Civ.P. 301 and *McCarley v. Hopkins*, 687 S.W.2d 510, 512 (Tex.App.–Houston [1st Dist.] 1985, no writ). We agree that the granting of a motion for directed verdict is proper when the prevailing party is entitled to a judgment as a matter of law. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). However, of itself, the denial of a directed verdict is not ordinarily appealable; the denial of the motion serves to preserve legal errors, such as no evidence to support a verdict, for appellate review. *See, e.g., Wal-* *Mart Stores, Inc. v. Berry*, 833 S.W.2d 587, 595 (Tex.App.–Texarkana 1992, writ requested) (denial of a motion for directed verdict reviewable only if the denial is in a formal order or judgment). It is not necessary for us to comment further in the present case because the substance of the motion for directed verdict was otherwise preserved and is presented in this appeal through appellant's "no evidence" point.

**2.** The current version of the statute has been amended to provide that the bond shall be approved as to form by the attorney general and shall be conditioned on the applicant's payment of all valid bank drafts, including checks, drawn by the applicant for the purchase of motor vehicles. Tex.Rev.Civ.Stat.Ann. art. 6686(a)(1–A)(vii) (Vernon Supp.1993).

**3.** Tex.Bus. & Com.Code Ann. §§ 17.41, et seq. (Vernon 1987 & Supp.1993).

Settlement Practices Act,[4] and generally alleging unlawful and unfair acts and practices. At trial, the parties stipulated to $25,000.00 in actual damages. The jury found that Lawyers Surety engaged in one or more deceptive acts or practices, that such act or acts were committed knowingly, and that Lawyers Surety's failure to act fairly and in good faith amounted to such an entire want of care as to indicate a conscious indifference to the rights of Royal Chevrolet. The jury assessed $40,000.00 in exemplary damages. The trial court entered judgment on the jury's verdict but, rather than awarding the exemplary damages found by the jury, entered judgment for $75,000.00.

### Bank Drafts and Checks

■ The crux of Lawyers Surety's position is that the term "bank draft" does not include the term "check," and thus it was not liable for the judgment against Lancaster, and therefore rightfully denied Royal Chevrolet's claim. A draft is an instrument executed by one party instructing a second party to pay a certain amount of money to a third party. BLACK'S LAW DICTIONARY 493 (6th ed. 1990). A check is a draft which is payable on demand. *Id.* at 237. A bank draft is a draft executed by a bank. *Id.* at 145.[5]

Both the bond and the statute condition payment of claims on the purchasing dealer's payment of all valid bank drafts drawn by the dealer for the purchase of motor vehicles.[6] The question then is whether in defining bank drafts drawn by a dealer to purchase vehicles we should include checks drawn by a dealer to purchase vehicles.

■ It is only logical that, for purposes of this bond and statute, bank drafts include checks. Otherwise, a surety like Lawyers Surety would never be liable as surety for a dealer, like Lancaster, who regularly purchased automobiles with checks. This interpretation is consistent with the subsequent amendment to Article 6686(a)(1–A)(vii), which conditions payment of claims on a bond on the purchasing dealer's payment of all valid bank drafts, including checks. TEX.REV.CIV.STAT.ANN. art. 6686(a)(1–A)(vii) (Vernon Supp.1993). We hold that, for purposes of the applicable statutory car dealer's bond, the term "bank drafts" includes the term "checks."[7] Any other holding would not make sense.

### Sufficiency of Pleadings

■ Lawyers Surety complains that the jury's substantive findings are unsupported by Royal Chevrolet's pleadings. Lawyers Surety did not specially except to the pleadings, but objected to the jury questions as being unsupported by the pleadings. It now complains that Royal Chevrolet's pleadings do not support the questions submitted to the jury or the jury's verdict. The purpose of the fair and adequate notice requirement for a petition is to allow the opponent to prepare a defense; in the absence of special exceptions, a petition is construed in favor of the pleader. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982). And, pleadings are to be construed so as to do substantial justice. TEX. R.CIV.P. 45.

■ Royal Chevrolet alleged that Lawyers Surety agreed to indemnify members

---

4. TEX.REV.INS.CODE art. 21.21–2 (Vernon 1981 & Supp.1993).

5. Royal Chevrolet offers two definitions for a bank draft: (1) a draft executed by a bank, or (2) a draft executed by a car dealer on an envelope containing documents relating to the transfer of title. The latter definition, according to Royal Chevrolet's expert witness, actually describes a documentary customer draft, which is not synonymous with a bank draft.

6. The bond and the statute also condition payment of a claim on the bond on obtaining a

judgment against the bond holder. While the judgment did not refer to Lancaster's payment with bad checks, Lawyers Surety acknowledged in its letter denying the claim that it understood that Royal Chevrolet's claim arose from Lancaster's failure to pay checks he drew to purchase cars.

7. This holding effectively overrules Lawyers Surety's complaints about the trial court's jury instructions, which told the jury that the checks written by Lancaster were bank drafts for purposes of a car dealer's surety bond.

of the public if Lancaster failed to make good on instruments drawn by him to purchase motor vehicles. It also alleged that it sued Lancaster, recovered a judgment against him and made a demand that Lawyers Surety pay on its bond, and that Lawyers Surety committed an unfair claim settlement practice and deceptive acts by falsely representing and advertising with regard to its surety bonds. In the absence of any special exceptions, we construe the pleadings in favor of the pleader. So construed, we conclude that the plaintiff properly alleged violations of the Deceptive Trade Practices Act, the Unfair Claim Settlement Practices Act, and Article 21.21 of the Insurance Code.[8] The jury questions and verdict are adequately supported by the pleadings.

### Evidence Supporting Judgment

 Lawyers Surety maintains that there is no evidence to support the verdict on which the judgment is based. In deciding a "no evidence" point, we consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We now consider whether any evidence supports the jury findings.

In May of 1991, the attorney representing Royal Chevrolet notified Lawyers Surety that Lancaster purchased automobiles with bank drafts backed by insufficient funds. Royal Chevrolet made a claim on the bond. Lawyers Surety replied that it was not obligated to consider Royal Chev-

rolet's claim until it obtained a judgment against Lancaster. Royal Chevrolet reduced its action against Lancaster to a judgment for an amount in excess of $25,-000.00. It then again demanded that Lawyers Surety pay on the bond. The response from a company attorney was the following:

> It is our understanding from speaking with the principal that when he purchased the vehicles from Royal Chevrolet (your client), he tendered checks, which bounced. The bond does not cover bad checks, only the failure to pay a bank draft or provide a title. The word "draft" has a very specific and special meaning in the car dealer industry. A check is definitely not a "bank draft" and, therefore, we must respectfully deny Royal Chevrolet's claim.

 Royal Chevrolet sought to prove that Lawyers Surety wrongfully denied the claim, that the bond covering "bank drafts" included "checks," and that Lawyers Surety was aware of that. Royal Chevrolet proved that Lawyers Surety had maintained its position—that "bank drafts" do not include "checks"—in the past, had litigated that issue in Texas courts and showed that final judgments were obtained against Lawyers Surety in other cases much like the present one.[9] The heart of Royal Chevrolet's complaint in this case was that Lawyers Surety issued surety bonds to car dealers who might well be buying cars by checks, while knowing both that it would not honor any claims against it based upon the dealers' bad checks for the purchase of cars, and also that Texas courts had held that it was liable on its bonds for a judgment against a car dealer

---

8. Tex.Rev.Civ.Stat.Ann. art. 21.21 (Vernon 1981 & Supp.1993).

9. Lawyers Surety's attorney objected to the evidence of other lawsuits and judgments because it was hearsay, "not in issue," "outside the pleadings," not relevant to any issue and harmful. The trial court correctly overruled these objections. This evidence was not hearsay and was relevant. That Lawyers Surety knew that Texas courts had previously held that "bank drafts"

include "checks" is relevant to its state of mind in denying the claim of Royal Chevrolet and tends to prove several of the questions before the jury. In an answer to an interrogatory, Lawyers Surety listed numerous other instances in which *it denied claims during 1988, 1989, and 1990* on the basis that the bond it issued to other dealers did not cover bad checks written by the car dealers. This evidence was admitted, but not before the jury.

for bad checks it had written for the purchase of cars.

In its charge to the jury, the trial court instructed that a check is a bank draft. The jury, in answer to questions, found that Lawyers Surety engaged in an unfair and deceptive act or practice by not attempting to effectuate a prompt, fair and equitable settlement of a claim when liability has become reasonably clear; that it engaged in such conduct knowingly; and that its failure to act fairly and in good faith amounted to such an entire want of care as to indicate the conduct complained of was a result of conscious indifference to Royal Chevrolet's rights.

Evidence of an insurer's denial of unrelated claims for the same reason has been held sufficiently connected so as to indicate a scheme or plan. *See Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 815 (Tex. App.–Corpus Christi 1988, no writ). Based upon the evidence before it, a reasonable jury could infer a pattern of knowing failure to act in good faith in claims denials. We cannot conclude that no evidence supported the jury findings.

### Damages

Lawyers Surety complains that the trial court awarded three times the actual damages. The parties agreed that actual damages, if any, were $25,000.00 and, thus, no question of actual damages was asked the jury. The jury found that Lawyers Surety acted knowingly and awarded $40,000.00

punitive damages. The court disregarded that finding and entered a judgment for $75,000.00.

Under the Deceptive Trade Practices Act, for treble damages to be awarded in a jury trial, the jury must treble the damages. *See Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446, 448 (Tex. 1984); TEX.BUS. & COM.CODE ANN. art. 17.-50(b) (Vernon Supp.1993).[10] Because the jury was not asked about this question and did not award three times actual damages (in excess of $1,000.00), the damages awarded are not proper under the Deceptive Trade Practices Act.[11] However, the court may well have awarded damages based upon Article 21.21 of the Insurance Code.[12] Under the Insurance Code, the trial court could have awarded two times the amount of actual damages in addition to actual damages. TEX.REV.CIV.STAT.ANN. art. 21.21, § 16(b) (Vernon Supp.1993). Actual damages here were $25,000.00. The court apparently did award two times the amount of actual damages in addition to the actual damages, for a total of $75,-000.00. No other legal basis for the amount of damages exists. When there are alternative measures of damages, the trial court should utilize the findings affording the greatest recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 367 (Tex.1987). Here, the trial court properly entered judgment for the amount of

---

**10.** TEX.BUS. & COM.CODE ANN. § 17.50(b) (Vernon Supp.1993) provides in part that:

> (b) In a suit filed under this section, each consumer who prevails may obtain:
> (1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000. . . .

**11.** Nor are they proper under the Unfair Claim Settlement Practices Act. That Act does not create a private cause of action. *Progressive County Mut. Ins. Co. v. Boman,* 780 S.W.2d 436

(Tex.App.–Texarkana 1989, no writ). However, in appropriate circumstances, a violation of that Act may be incorporated into a Deceptive Trade Practices Act claim or an Insurance Code claim. *See Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 134 (Tex.1988).

**12.** TEX.REV.CIV.STAT.ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1993) provides for recovery of "the amount of actual damages plus court costs and reasonable and necessary attorneys' fees. If the trier of fact finds that the defendant knowingly committed the acts complained of, the court shall award, in addition, two times the amount of actual damages; . . . ." Article 21.21 makes actionable numerous acts which are considered unfair or deceptive.

damages which allowed the greatest recovery.[13]

We affirm the trial court's judgment.

---

**13.** Lawyers Surety further complains about the award of prejudgment and post-judgment interest absent pleading for such awards. Prejudgment interest sought at common law must be pleaded for; however, an award of statutory interest may be supported by a prayer for general relief. *Benavidez v. Isles Constr. Co.,* 726 S.W.2d 23, 25 (Tex.1987). Here, an ascertainable sum of money can be determined to have been due and payable at a certain date before judgment. Prejudgment interest is proper. Post-judgment interest is recoverable on all judgments. TEX.REV.CIV.STAT.ANN. art. 5069–1.05, §§ 1, 2 (Vernon Supp.1993).