In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-283 CV


____________________



OLYMPUS INSURANCE COMPANY, Appellant



V.



BEAUMONT DEALERS AUTO AUCTION, INC., Appellee






On Appeal from the County Court at Law No. 1


Jefferson County, Texas


Trial Cause No. 95689






MEMORANDUM OPINION



 Olympus Insurance Company ("Olympus"), the surety on a motor vehicle dealer's
surety bond executed by Marcia Guillory d/b/a G & G Auto Sales as principal, challenges
the trial court's summary judgment in favor of Beaumont Dealers Auto Auction, Inc.
("BDAA"). After she failed to pay for eleven vehicles, BDAA took a default judgment
against Guillory, then sued Olympus on its bond and obtained the summary judgment now
on appeal. (1) To recover, BDAA must prove it obtained the first judgment based on the
dealer's failure to pay valid bank drafts or checks drawn to buy motor vehicles. The
instruments submitted as BDAA's summary judgment evidence of dishonored drafts are
not "valid bank drafts" or "checks." Because BDAA failed to establish as a matter of law
that it obtained judgment against Guillory for acts or omissions covered by the bond, we
reverse and remand.

 First, we must resolve BDAA's challenge to the timeliness of this appeal. The
summary judgment signed on July 7, 2004, grants judgment for BDAA on its claim against
Olympus, recites the plaintiff shall have execution and other process necessary to enforce
the judgment, and states that all relief not expressly granted is denied. The judgment does
not expressly dispose of Olympus's live counterclaim for declaratory relief. The trial court
signed an order of nonsuit on the counterclaim on June 10, 2005. Olympus filed notice of
appeal twenty days later. BDAA contends the summary judgment disposed of Olympus's
counterclaim for declaratory judgment because Olympus's answer and counterclaim deal
with the same issue, namely, the validity of BDAA's claim under the bond and the statute. 
A judgment issued without a conventional trial is final if, and only if, "it actually 
disposes of every pending claim and party or . . . it clearly and unequivocally states
that it finally disposes of all claims and all parties." Lehmann v. Har-Con Corp., 39
S.W.3d 191, 205 (Tex. 2001). The 2004 "Order on Plaintiff's Motion for Summary
Judgment" mentions neither Olympus's request for declaratory judgment nor its request
for attorney fees. Neither the "Mother Hubbard" clause nor the execution clause finalize
an otherwise interlocutory judgment. Id. at 206; In re Burlington Coat Factory Warehouse
of McAllen, Inc., 167 S.W.3d 827, 830 (Tex. 2005) (mandamus proceeding staying
execution authorized by interlocutory default judgment). Because the summary judgment
signed in this case became final and appealable when the trial court signed the order of
nonsuit, Olympus timely perfected its appeal. 

 The statute at issue in this appeal requires that an applicant for a motor vehicle
dealer general distinguishing number must furnish proof of an executed $25,000 surety
bond. Tex. Transp. Code Ann. § 503.033 (Vernon 1999). The bond must be in a form
approved by the attorney general, must be conditioned on "the payment by the applicant
of all valid bank drafts, including checks, drawn by the applicant to buy motor vehicles"
and "the transfer by the applicant of good title to each motor vehicle the applicant offers
for sale." Id. According to the Transportation Code, recovery on the bond may be had
by a party obtaining "a judgment [against a motor vehicle dealer] assessing damages and
reasonable attorney's fees based on an act or omission on which the bond is conditioned
that occurred during the term for which the general distinguishing number was valid." Id. 
The surety's liability on the bond is limited to the amount "of the valid bank drafts,
including checks, drawn by the applicant to buy motor vehicles" or "paid to the applicant
for a motor vehicle for which the applicant did not deliver good title" and "attorney's fees
that are incurred in the recovery of the judgment and that are reasonable in relation to the
work performed." Id. The contract between Guillory and Olympus provided "the
Principal shall pay all valid bank drafts, including checks, drawn by the Principal for the
purchase of motor vehicles and transfer good title to each motor vehicle that the Principal
purports to sell. . . ." According to the terms of the bond, recovery may be made by a
person who obtains a judgment against a dealer assessing damages and attorney's fees "for
an act or omission on which the bond is conditioned or if the act or omission occurred
during the term for which the general distinguishing number will be valid." Although the
contract varies slightly from the language of the statute, BDAA does not contend that the
parties contractually expanded the protections mandated by the statute. To recover, BDAA
must establish that Guillory failed to pay valid bank drafts, including checks, drawn to buy
motor vehicles.

 BDAA's judgment in its suit against Guillory does not specify the cause of action
in controversy. The petition filed in the Guillory suit states a cause of action for breach
of contract and breach of duty of good faith and fair dealing but does not mention
dishonored drafts. As summary judgment evidence, BDAA submitted ten documents it
contends are dishonored bank drafts. None of the documents identify an account at any
financial institution upon which they purport to be drawn. Each bears the printed notation:
"This draft drawn on your bank at your customer's request pay at par or return giving
reason." As BDAA concedes, however, Guillory had no financial institution on which to
draw. We discern no apparent controversy between the parties over whether Guillory
honored these drafts (she did not) or whether the drafts were drawn to purchase motor
vehicles (they were). The parties limit their dispute to whether the documents at issue are
"valid bank drafts." 

 BDAA relies on Gramercy Ins. Co. v. Au1ction Finance Program, Inc., 52 S.W.3d
360, 362-63 (Tex. App.--Dallas 2001, pet denied), to support its argument that its
transactions with Guillory are covered by the bond. In Auction Finance, an auction house
delayed depositing checks while the car dealer located buyers for the purchased vehicles. 
Id. Although the auction finance company never held title to the vehicles, it could recover
against the bond because the dealer issued the dishonored checks to purchase the motor
vehicles. Id. That case involved checks, and checks are expressly included in
Transportation Code Section 503.033. See Tex. Transp. Code Ann. § 503.033 (Vernon
1999). In contrast, BDAA did not prove that the instruments at issue here were drawn on
an account at a financial institution. 

 BDAA argues that neither the bond nor the statute requires the insured to operate
her business using checks, concedes Guillory ran a "cash only operation," and contends
the dishonored instruments are bank drafts. A draft is an unconditional order to pay the
bearer or an identified person (in this case, BDAA) a fixed amount of money on demand
or at a definite time from a definite place. See Tex. Bus. & Com. Code Ann. § 3.104
(Vernon 2002). "Bank draft" is a banking industry term for a draft drawn by a bank on
an account maintained at a financial institution. Lawyers Surety Corp. v. Riverbend Bank,
N.A., 966 S.W.2d 182, 185 (Tex. App.--Fort Worth 1998, no pet.). By definition, a
"bank draft" is paid by a bank, not by the customer. Id. at 186. For purposes of Section
503.033 of the Transportation Code, the term "payment of valid bank drafts" means "bank
drafts for which a car dealer has sufficient funds at its disposal so that the drawee bank will
honor them." Id. In Riverbend Bank, the bank financing the dealer's floor plan could not
recover on the bond after the car dealer defaulted because the obligation consisted of a
promissory note secured by inventory, rather than a bank draft. Id. at 187. A "bank" is
a person engaged in the business of banking. Tex. Bus. & Com. Code Ann. §
1.201(b)(4) (Vernon Supp. 2005). For the drafts at issue in this case to be "valid bank
drafts," the instruments must have been drawn by or on a financial institution. 

 The "drawee" is the party ordered in the draft to make payment. Tex. Bus. &
Com. Code Ann. § 3.103(a)(4) (Vernon Supp. 2005). On the face of five of the
documents, it appears Community Bank is the drawee, by virtue of its name being
handwritten on the lower left portion of the document; however, the parties agree that
Guillory had no financial relationship with Community Bank. In its brief, BDAA concedes
Guillory "did not have banking arrangements that would allow the normal use of banking
channels." According to BDAA, Guillory was a "cash only" customer who would
purchase vehicles at auction and "pay cash for the draft at BDAA's offices" three days
later to obtain the titles. We therefore have the rather curious situation of an allegedly
valid draft with no bank or other financial institution from which to draw the stated amount
of the draft. 

 BDAA also failed to establish the validity of the drafts as a matter of law. The
"drawer" is the person who signs or is identified in the draft as the person ordering
payment. Tex. Bus. & Com. Code Ann. § 3.103(a)(5) (Vernon Supp. 2005). Guillory's
name does not appear on any of the documents, but each purports to be authorized by "G
& G Auto Sales." There appears to be no factual dispute that G & G Auto Sales is a
business operated by Guillory as a sole proprietorship. Only two of the documents bear
a signature. The amount payable on these documents and three others have been modified
and now bear the notation "balance owed" in an amount substantially less than the original
amount. Of the remaining documents, five are "To Community Bank - Central" and bear
a bank stamp dated after the date of the Guillory judgment. Thus, it appears five of the
ten instruments were presented to Community Bank after BDAA took its judgment against
Guillory. None of the five presented documents are signed by the maker and the other five
documents bear no indicia of presentment or dishonor. Thus, none of the documents
establish that BDAA's judgment against Guillory is for failing to honor valid bank drafts
or checks.

 The summary judgment record does include a demand letter from BDAA to
Guillory; the motor vehicle descriptions and amounts correspond to the drafts. The
summary judgment evidence also includes the affidavit of BDAA's office manager. The
affidavit states the documents described above depict "drafts given to BDAA by G & G
Auto Sales for the purchase of vehicles at the auction." According to the office manager,
"Each draft was dishonored by the bank and returned to BDAA through the normal
banking channels." The summary judgment evidence of the documents themselves belies
the office manager's assertion. Summary judgment cannot stand on a record containing
conflicting evidence of whether a judgment purportedly taken for failure to pay valid bank
drafts or to deliver titles actually concerns the failure to repay a loan. See Old Republic
Sur. Co. v. Bonham State Bank, 172 S.W.3d 210, 216 (Tex. App.--Texarkana 2005, no
pet.). 

 Because the drafts offered by BDAA as its evidence that Guillory failed to honor
valid bank drafts are neither checks nor bank drafts, BDAA failed to establish it recovered
judgment against Guillory for an act covered by Olympus's surety bond. The trial court
erred in granting BDAA's motion for summary judgment. We reverse the judgment of the
trial court and remand the cause for further proceedings consistent with this opinion.

 REVERSED AND REMANDED.

 



 _____________________________

 STEVE McKEITHEN

 Chief Justice



Submitted on January 19, 2006

Opinion Delivered March 16, 2006


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. In five issues, Olympus asserts: (1) the summary judgment evidence submitted by
BDAA fails to conclusively establish that its judgment against Guillory was based on an
act or omission covered by the bond; (2) BDAA relied on an unplead claim that Guillory
failed to honor drafts given for the purchase of automobiles; (3) conflicting evidence of
whether drafts were dishonored precluded summary judgment for BDAA; (4) Olympus's
summary judgment evidence establishes as a matter of law that BDAA's judgment against
Guillory was not based on Guillory's failure to pay bank drafts for cars she purchased; and
(5) the trial court erred in awarding attorney's fees to BDAA in the absence of pleading
and proof.