OPINION

 

No. 04-10-00616-CV

 

IN THE
GUARDIANSHIP OF Otilia PATLAN, an incapacitated person

 

From the Probate
Court No 2, Bexar County, Texas

Trial Court No. 2007-PC-0832

Honorable Tom
Rickhoff, Judge Presiding

 

Opinion by:   Karen Angelini, Justice

 

Sitting:                     Catherine Stone, Chief Justice

                     Karen
Angelini, Justice

                     Marialyn
Barnard, Justice

 

Delivered and
Filed:  May 11, 2011

 

AFFIRMED

                                                                     

           Appellant
Mary Pena, Otilia Patlan’s guardian, appeals the trial court’s granting of
Appellee Jesus Patlan Jr.’s no-evidence and traditional motion for summary
judgment. The main issue in this appeal is whether the time period a previous
lawsuit is pending before being dismissed for want of prosecution, when that
lawsuit is between the same parties and contains the same allegations, should
be considered in determining whether an adequate time for discovery has passed
in the subsequent suit pursuant to Texas Rule of Civil Procedure 166a(i).
Because we hold such time can be considered in determining whether an adequate
time for discovery has passed under Rule 166a(i), we find the trial court did
not abuse its discretion in denying Mary Pena’s motion to continue the summary
judgment hearing. Further, because Mary Pena did not produce sufficient
evidence in response to the no-evidence motion for summary judgment, we hold
the trial court did not err in granting the no-evidence motion for summary
judgment. Thus, we affirm the judgment of the trial court.[1]

Background

 

           Otilia
Patlan is a ninety-six-year-old woman who suffers from senile dementia. Otilia
and her husband, Jesus Patlan Sr., married in 1971, but had no children
together. However, they each had children from previous marriages. Appellant
Mary Pena (“Mary”), who was appointed Otilia’s guardian on June 20, 2007, is
Otilia’s daughter. 

           At
the time of Otilia and Jesus Sr.’s marriage, Appellee Jesus Patlan Jr. (“Jesus
Jr.”) was the youngest in this blended family and considered Otilia to be his
mother, not a step-mother. He lived with his parents until his mid-twenties,
and as his parents grew older, he began taking care of them and managing their
affairs. He and his father even had a joint bank account set up so that Jesus
Jr. could pay his father’s bills. When his father died in 2005, he took over
the same role for his mother. Thus, Jesus Jr., who was an employee of Broadway
National Bank, had a joint account set up in his and his mother’s names. Otilia
signed all the necessary documents to set up the joint account. The funds from
his father’s pension, which now belonged to his mother as survivorship
benefits, were deposited into that joint account. Also deposited were proceeds
from his father’s life insurance policy under which Otilia was the beneficiary.

           In
January 2007, Otilia’s condition deteriorated to such an extent that she had to
be admitted to a hospital. She was later transferred to a nursing home for
rehabilitation. On June 20, 2007, her daughter Mary was appointed her guardian.
In looking at Otilia’s personal affairs, Mary became suspicious that Jesus Jr.
was using Otilia’s funds for his own personal benefit, and not for Otilia’s.
Mary hired an attorney who, on January 31, 2008, filed an original petition and
application for a temporary restraining order. That same day, the trial court
signed the temporary restraining order and set the cause for a temporary
injunction hearing. In response Jesus Jr. filed an answer to the lawsuit.

           At
the temporary injunction hearing on March 4, 2008, Jesus Jr. took the stand and
testified. He testified that the culture of his family was such that everyone
helped whoever needed the help. He testified that before his father’s death,
his wife had lost her job, and his father had been helping them through a tough
period. After his father died, he testified that his mother also wanted to help
them. Jesus Jr. admitted that some of his mother’s money was used for the
benefit of his own family, but he claimed that these were gifts from his
parents. He further testified his mother knew he was taking money out of the
joint account and wanted him to do so because of his family’s situation. 

           According
to Jesus Jr., he was not aware his mother suffered from dementia. He testified
that Mary, who worked for Otilia’s treating doctor, took care of Otilia’s
medical care and that Mary never told him about Otilia’s condition. He also
testified that in 2007, at some point before Mary was appointed Otilia’s
guardian, Adult Protective Services got involved in Otilia’s case, and the case
worker told him that he was not keeping a proper accounting of Otilia’s bank
account. The caseworker told him that he needed to be more “formal” and should
not commingle funds. Jesus Jr. also testified that Mary had taken the
approximate $6,000 left in Otilia’s bank account and that he had nothing left
of Otilia’s money. 

           Jesus
Jr. further testified about the family home. According to Jesus Jr., his father
had owned the family home before his marriage to Otilia and thus, the family
home was his father’s separate property. And, because his father did not have a
will, he and his four siblings now owned the house as his father’s heirs. He
testified that Otilia signed a deed transferring all her interest in the family
home to him. However, under Texas intestate laws, Otilia had only a life-estate
interest in the home and no longer lived there, as she was living with Mary.
Jesus Jr. also testified that in keeping with his family’s “culture,” one of
his step-sisters (the youngest of Otilia’s daughters) now lived in the family
home with her son and paid only $250 per month in rent, which was below the
rental value of the house in the open market. Finally, according to Jesus Jr.,
his parents would not want him to pay back the money he took because it was not
part of their family culture to require repayment. At the hearing, copies of
the bank statements from the joint bank account were not available. At the end
of the injunction hearing, the trial court dissolved the TRO and denied the
temporary injunction. 

           A
month later, on April 8, 2008, Jesus Jr.’s attorney sent Mary’s attorney copies
of the bank statements related to Jesus Jr. and Otilia’s joint bank account.
Then, there was no activity in the case for almost a year.

           On
March 4, 2009, Mary’s current attorneys[2]
filed in probate court an “Application for Authority to Retain Counsel and to
Enter into a Contingent Fee Contract.” On May 8, 2009, the trial court granted
the application. Then, on July 15, 2009, Mary’s current attorneys filed in
district court, not probate court, a “Verified Petition to Take a Deposition
Before Suit,” requesting authority to take presuit depositions of Jesus Jr. and
Broadway National Bank.[3]
On July 23, 2009, Jesus Jr. filed in the district court a motion to transfer
the case to the probate court, and on August 21, 2009, the cause was
transferred to the probate court. On September 18, 2009, the trial court signed
an order allowing Mary to take the oral deposition of the corporate
representative of Broadway National Bank. The trial court also ordered that
Mary was allowed to take the oral deposition of Jesus Jr., but limited the
scope of such deposition to the facts and circumstances surrounding the
signature cards relating to the joint account made the basis of the suit.
Mary’s current attorneys took the deposition of a representative from Broadway
National Bank.[4]
However, they never deposed Jesus Jr. 

           On
February 16, 2010, even though she had already filed a petition against Jesus
Jr., Mary filed another “original” petition against Jesus Jr., alleging
conversion, theft, fraud, constructive trust, and rescission. On March 12,
2010, Jesus Jr. filed an answer and a motion to dismiss for want of
prosecution. In his motion, Jesus Jr. emphasized that there had been no action
on the case for a year and a half, that Mary’s second “original” petition
contained the same allegations as her first one, and that Mary had made no
attempt to depose him. On April 1, 2010, Mary responded to the motion to
dismiss for want of prosecution, arguing that neither she nor her attorneys
were aware of what discovery had been conducted or what pleadings were filed
between January 2008 and January 2009 because Mary’s former attorney had failed
to provide any of the documents. Mary’s response also stated that her current
attorneys had been unaware of the previous lawsuit and that “accident and
mistake” had led to the filing of the second “Original” Petition, which they
admitted should have been titled “First Amended Petition.” On April 26, 2010,
the trial court granted Jesus Jr.’s motion and dismissed Mary’s case for want
of prosecution without prejudice, specifically stating that “[a]ll litigation
in this cause filed on or prior to April 1, 2010, is dismissed without
prejudice to refiling.”

           On
April 5, 2010,[5]
Mary filed another original petition, alleging common law fraud, statutory
fraud, fraud by nondisclosure, and fraud in the inducement. In response, Jesus
Jr. filed an answer, which alleged the affirmative defense of limitations, and
a motion for no-evidence and traditional summary judgment. On May 12, 2010,
Mary filed a motion to continue the summary judgment hearing. She later also
filed a response to the summary judgment motion.[6]
On May 20, 2010, the trial court denied Mary’s motion for continuance. On July
22, 2010, the trial court granted Jesus Jr.’s motion for no-evidence and
traditional summary judgment. Mary now appeals.

                                           Motion for Continuance

           In
her motion for continuance, Mary argued that the trial court should continue
the summary judgment hearing because an adequate time for discovery had not yet
passed. She emphasized in her motion that the case had been on file for only
one month and that no discovery had been conducted in the case. Mary argued
that since filing the lawsuit on April 5, 2010, she had not had the opportunity
to depose Jesus Jr. or to send him discovery requests. Mary also argued that in
order to respond to Jesus Jr.’s summary judgment motion, she needed to “confer
with and obtain affidavits from Plaintiff’s expert, Julian R. Cantu, M.D.[7] and Mary Pena.”[8]

           On
May 19, 2010, at the hearing on the motion for continuance, Mary’s attorney
argued that additional time was needed to obtain testimony from Dr. Cantu about
whether Otilia was capable of transferring her interest in the family home to
Jesus Jr. at the time she signed the deed or whether she was capable of
consenting to Jesus Jr. withdrawing money from their joint bank account. Mary’s
attorney then stated that she had requested the bank documents regarding the
joint account from Broadway Bank, but had not yet received anything.[9] The trial court did not rule at the
hearing, but the next day signed an order denying Mary’s motion to continue the
summary judgment hearing.

           In
her first issue on appeal, Mary argues that the trial court abused its discretion
in denying her motion to continue the summary judgment hearing because an
adequate time for discovery had not passed as required under Texas Rule of
Civil Procedure 166a(i). When a party contends that it has not had an adequate
opportunity for discovery before a summary judgment hearing, it must file
either an affidavit explaining the need for further discovery or a verified
motion for continuance. Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d
640, 647 (Tex. 1996). Here, Mary’s motion for continuance was verified by her
attorney. 

           We
review the trial court’s decision to grant or deny a motion for continuance for
abuse of discretion. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.
1986); see also Tenneco, 925 S.W.2d at 647. A trial court abuses its discretion
only when it acts in an unreasonable and arbitrary manner, or when it acts
without reference to any guiding rules and principles. Beaumont Bank, N.A.
v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). Thus, we may not reverse a
trial court’s ruling for an abuse of discretion merely because we may disagree
with that decision. Id. 

           The
function of summary judgment is not the deprivation of a party’s right to a
full hearing on the merits of any real issue of fact, but rather to “eliminate
patently unmeritorious claims and untenable defenses.” Casso v. Brand,
776 S.W.2d 551, 555 (Tex. 1989) (quotation omitted). Thus, under Texas Rule of
Civil Procedure 166a(i), a party may not move for a no-evidence summary
judgment until after an adequate time for discovery has passed. Tex. R. Civ. P. 166a(i). Notably, Rule
166a(i) does not require that discovery must have been completed, but rather
that there was “adequate time.” McInnis v. Mallia, 261 S.W.3d 197, 200
(Tex. App.—Houston [14th Dist.] 2008, no pet.). The comment to rule 166a(i)
provides that “[a] discovery period set by pretrial order should be adequate
opportunity for discovery unless there is a showing to the contrary, and
ordinarily a motion under paragraph (i) [a no-evidence motion] would be
permitted after the period but not before.” Tex.
R. Civ. P. 166a(i) cmt. Unlike other notes and comments in the rules of
civil procedure, this comment was specifically “intended to inform the
construction and application of the rule.” Tex.
R. Civ. P. 166a(i) cmt. 

           Pointing
to this language, Mary emphasizes she filed her lawsuit on April 5, 2010, and
Jesus Jr. filed his no-evidence motion for summary judgment soon thereafter on
April 22, 2010. She argues that a time period of seventeen days from when the
lawsuit is filed does not constitute adequate time. However, in so arguing,
Mary completely disregards the time period the previous lawsuit had been on
file before it was dismissed for want of prosecution. Thus, the issue in this
case is whether the time period a previous lawsuit is pending before being
dismissed for want of prosecution, when that lawsuit is between the same
parties and contains the same allegations, should be considered in determining
whether an adequate time for discovery has passed in the subsequent lawsuit. We
have found no case addressing this issue, and the parties have not directed us
to such a case.

           Generally,
in considering whether the trial court permitted an adequate time for
discovery, we consider the following factors: (1) the nature of the case, (2)
the nature of the evidence necessary to controvert the no-evidence motion, (3)
the length of time the case was active, (4) the amount of time the no-evidence
motion was on file, (5) whether the movant had requested stricter deadlines for
discovery, (6) the amount of discovery that already had taken place, and (7)
whether the discovery deadlines in place were specific or vague. McInnis,
261 S.W.3d at 201. We review a trial court’s determination that there has been
an adequate time for discovery on a case-by-case basis, under an
abuse-of-discretion standard. Id.

1.    
The Nature of the Case and Evidence Needed to Defeat Motion

           This
case is not of a nature that would seem to require extensive or complex
discovery. See Rest. Teams Int’l, Inc. v. MG Sec. Corp., 95 S.W.3d 336,
340 (Tex. App.—Dallas 2002, no pet.). None of Mary’s claims would require more
than minimal discovery to defeat a no-evidence motion for summary judgment. See
id. In fact, in her motion for continuance and at the hearing on the
motion, all Mary argued she needed to do to respond to the motion for summary
judgment was to take Jesus Jr.’s deposition, obtain an affidavit from Otilia’s
doctor about Otilia’s medical condition, authenticate the bank records from the
joint bank account, and authenticate the deed transferring Otilia’s interest in
the family home to Jesus Jr.

2.    
The Length of Time the Case was Active 

           This
factor, of course, depends on whether the time the previous case had been
pending should be considered in determining whether an adequate time for
discovery had passed. Mary argues that the time the previous case had been on
file should not be considered, as the previous case was dismissed without
prejudice. However, whether a case is dismissed with or without prejudice does
not really go to the issue of whether there has been an adequate time for
discovery. A dismissal with prejudice is a final determination on the merits
and prevents a party from re-filing a case under the doctrines of res judicata
or collateral-estoppel. Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.
1991). Thus, the plaintiff can appeal the dismissal but cannot re-file the same
lawsuit unless the dismissal is reversed on appeal. See id. In contrast,
a dismissal without prejudice is not a final determination on the merits. Thus,
if the statute of limitations has not run, a case may be re-filed without
appealing the order of dismissal. Webb v. Jorns, 488 S.W.2d 407, 409
(Tex. 1972). Here, however, whether a party has had an adequate time for
discovery is not related to the question of whether a case may be re-filed.

           Looking
at the language of Rule 166a(i), the rule states that “[a]fter an adequate time
for discovery,” a party may move for a no-evidence motion for summary judgment.
Tex. R. Civ. P. 166a(i). The rule
does not explicitly state whether “adequate time” refers to only the instant
suit or whether it can refer to a previous lawsuit, between the same parties
and involving the same allegations, that has been dismissed for want of
prosecution. Instead, it refers only to “adequate time.” And, in this case,
Mary clearly had “adequate time” to conduct discovery. Mary filed her original petition
in her original lawsuit on January 31, 2008. At the time Jesus Jr. moved to
dismiss her original lawsuit for want of prosecution, she had had over two
years to conduct discovery. And, at the time the trial court granted Jesus
Jr.’s no-evidence motion for summary judgment, Mary had had almost
two-and-a-half years to conduct discovery.

           Mary
argues that most of the time her previous lawsuit was pending should not count
because her previous attorney was derelict in his duty to prosecute her case.
However, the actions of an attorney, as his client’s agent, necessarily binds
the client. See Gracey v. West, 422 S.W.2d 913, 916 (Tex. 1968) (holding
that attorney’s negligence in failing to prosecute lawsuit was not ground for
setting aside judgment dismissing cause for want of prosecution because “as
long as the attorney-client relationship endures, with its corresponding legal
effect of principal 


and agent, the acts of one must necessarily bind the other as a general rule”).[10] Therefore, the actions of her
previous attorney are not considered in looking at how long her case was
active. And, Mary’s case was active for an extended period of time.

3.    
The Length of Time the No-Evidence Motion was on File       

           Jesus
Jr. filed the no-evidence motion for summary judgment on April 22, 2010. The
summary judgment hearing occurred on July 20, 2010. Thus, the no-evidence
motion for summary judgment was on file for almost ninety days at the time of
the summary judgment hearing. Further, we note that Rule 166a(i) does not mandate
a minimum period of time a case must be pending before a motion may be filed,
as long as there was adequate time for discovery. Rest. Teams, 95 S.W.3d
at 340; see Tex. R. Civ. P.
166a(i).

4.    
Status of Discovery

           Mary
argued in her motion for continuance that she needed time to depose Jesus Jr.,
retrieve bank records, prepare an affidavit from Otilia’s treating doctor, and
prepare her own affidavit. As noted above, because the time period Mary’s
previous case was on file should be considered in determining whether an
adequate time for discovery had passed, Mary had more than sufficient time to
accomplish these tasks. 

           Looking
at the above factors, we hold that the trial court did not abuse its discretion
in denying Mary’s motion for continuance. 

No-Evidence
Motion for Summary Judgment

           Under
Rule 166a(i), a party may move for a no-evidence summary judgment on the ground
that there is no evidence of one or more essential elements of a claim or
defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The trial
court must grant the motion unless the respondent produces summary judgment
evidence raising a genuine issue of material fact. Id. The respondent is
“not required to marshal its proof; its response need only point out evidence
that raises a fact issue on the challenged elements.” Tex. R. Civ. P. 166a(i) cmt. In reviewing a trial court’s
order granting a no-evidence summary judgment, we consider the evidence in the
light most favorable to the respondent and disregard all contrary evidence and
inferences. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750‑51
(Tex. 2003). Thus, a no-evidence summary judgment is improperly granted if the
respondent brings forth more than a scintilla of probative evidence to raise a
genuine issue of material fact. Id. at 751; see Tex. R. Civ. P. 166a(i). In determining
if the respondent has brought forth more than a scintilla of evidence, we
consider whether the evidence would enable reasonable and fair-minded jurors to
differ in their conclusions. Hamilton v. Wilson, 249 S.W.3d 425, 426
(Tex. 2008). 

           In
her live petition, Mary brought the following claims against Jesus Jr.: common
law fraud, fraud in the inducement, fraud by nondisclosure, and statutory
fraud. She also requested the creation of a constructive trust based on fraud.
In his no-evidence motion for summary judgment, Jesus Jr. argued that Mary had
no-evidence to support specific elements of these claims.

1.    
Common Law Fraud, Fraud in the Inducement, and Fraud by Nondisclosure

           To
bring a claim for common law fraud, a plaintiff must show the following: (1) a
material misrepresentation was made; (2) the representation was false; (3) when
the representation was made, the speaker knew it was false or made it
recklessly without any knowledge of the truth and as a positive assertion; (4)
the speaker made the representation with the intent that the other party should
act upon it; (5) the party acted in reliance on the representation; and (6) the
party thereby suffered injury. In re FirstMerit Bank, N.A., 52 S.W.3d
749, 758 (Tex. 2001) (orig. proceeding). To bring a claim for fraud in the
inducement, a plaintiff must show the elements of fraud, see Balogh
v. Ramos, 978 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1998, pet. denied),
and must show that she has been fraudulently induced to enter into a binding
agreement. Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001) (“Without a
binding agreement, there is no detrimental reliance, and thus no fraudulent
inducement claim. That is, when a party has not incurred a contractual
obligation, it has not been induced to do anything.”).

           In
his no-evidence motion for summary judgment, Jesus Jr. argued that Mary had no
evidence that (1) he made any sort of material misrepresentation to Otilia; (2)
any representation made by Jesus Jr. was false; (3) when any alleged
misrepresentation was made, he knew it was false; (4) he made any
representation with the intent that Otilia act on it; (5) Otilia reasonably
relied on a representation made by Jesus Jr.; and (6) Otilia entered into a
binding agreement based on the false misrepresentation.       With respect to
fraud by nondisclosure, Jesus Jr. argued in his no-evidence motion that Mary
cannot show he concealed from or failed to disclose material facts to Otilia.
He emphasizes in his appellate brief that Otilia was aware of their financial
arrangements and that she had signed signature cards and account designation
documents at the bank.     

           In
her brief, Mary argues that she did present some evidence that Jesus Jr. concealed
or failed to disclose certain facts to Otilia. She points to Jesus Jr.’s
testimony during the injunction hearing where he testified that he used some of
the money from the joint bank account for his personal expenses because his
wife was unemployed. However, Jesus Jr. also testified that his mother
consented to these withdrawals. Mary argues that Jesus Jr. should have known
that Otilia was unable to approve such withdrawals as she had been diagnosed
with senile dementia. For this proposition, Mary points to her own affidavit in
which she affirms that “[i]n early 2002, Dr. Julian R. Cantu diagnosed Mrs.
Patlan with senile dementia.”[11]
However, while this statement is evidence that Dr. Cantu diagnosed Otilia with
senile dementia, it is not evidence that Jesus Jr. knew Otilia
had been diagnosed with senile dementia. And, at the injunction hearing, Jesus
Jr. testified that he believed Otilia was capable of giving consent and that he
did not know she had been diagnosed with dementia. According to Jesus Jr.,
although he sometimes took Otilia to doctor’s appointments, the only thing he
knew “at the time was that, you know, she was under medications as far as for
blood pressure. Trying to think of — she was taking a lot of medications but we
were never told what everything was for. We were never told what the situation
was.” According to Jesus Jr., “Mary was the one [who] worked at the doctor’s
office, so she would oversee whatever Dr. Cantu said. So we relied on her to
fill us in on whatever situation was wrong with [Otilia].” When asked whether
Mary had told him that Otilia had been diagnosed with senile dementia, Jesus
Jr. replied, “[S]he never told us.” As evidence that Jesus Jr. knew his mother
had senile dementia, Mary also points to Jesus Jr.’s testimony at the injunction
hearing that a case worker from Adult Protective Services told him that he
needed to be “more formal” with the joint bank account. However, Jesus Jr.
testified that Adult Protective Services became involved with his mother’s case
right before Mary was appointed his mother’s guardian in 2007. This is not
evidence that relates to the time period at issue – 2005.

           With
respect to her claim for fraud by nondisclosure, Mary also argues that Jesus
Jr. had a fiduciary duty to disclose material facts to Otilia and that by not
disclosing all the money transactions made by him for his own personal use, he
committed fraud. In support of this statement, Mary points to the copies of the
bank records from the joint account. However, while the bank records are
evidence that transactions occurred; they are not evidence that Jesus Jr.
failed to disclose those transactions to Otilia. Jesus Jr. testified at the
injunction hearing that Otilia knew about the transactions. According to Jesus
Jr., he was just handling the family finances, like he had for his father, and
his mother knew about it. Mary, once again, points to Otilia having senile
dementia, but as noted above, there is no evidence Jesus Jr. knew about her
senile dementia. Therefore, we hold that Mary did not bring forth more than a
scintilla of probative evidence to raise a genuine issue of material fact with
respect to her claims for common law fraud, fraud in the inducement, and fraud
by nondisclosure.

2.    
Statutory Fraud

           To
bring a claim for statutory fraud, Mary must show the following: (1) the
transaction involved real estate; (2) Jesus Jr. made a false representation of
a material fact or made a false promise to do an act to Otilia, or benefited by
not disclosing that a third party’s representation or promise was false; (3)
the false representation was made for the purpose of inducing Otilia to enter
into a contract; (4) Otilia relied on the false representation or promise in
entering into the contract; and (5) the reliance caused Otilia injury. See
Tex. Bus. & Com. Code Ann. §
27.01 (West 2009) (titled “Fraud in Real Estate and Stock Transactions”); Fletcher
v. Edwards, 26 S.W.3d 66, 77 (Tex. App.—Waco 2000, pet. denied) (“A
plaintiff establishes a statutory fraudulent inducement claim under section
27.01 of the Business and Commerce Code by showing: a false representation of a
material fact; made to induce a person to enter a contract; and relied on by
that person in entering the contract.”). The statutory cause of action differs
from the common law only in that to recover actual damages, it does not require
proof that the defendant made a material false representation knowing it to be
false or made it recklessly as a positive assertion without any knowledge of
its truth. Fletcher, 26 S.W.3d at 77.

           In
his no-evidence motion, Jesus Jr. argued that Mary cannot prove that he made a
false misrepresentation of fact to Otilia, or benefited by not disclosing a
third party’s representation or promise was false. Similarly, he argued that
Mary cannot show that any representation made by him was made for the purpose
of inducing Otilia to enter into a real estate contract. He also argued that
Mary cannot show that Otilia relied on the false representation or promise by
entering into the contract. And, Jesus Jr. argued that Mary cannot show that
Otilia reasonably relied on a representation made by him, and that therefore
there is no evidence that such reliance caused injury. As evidence, Jesus Jr.
attached the original warranty deed showing that the family home was his
father’s separate property. Thus, Jesus Jr. argued that in executing the deed
to him, all Otilia conveyed was a life estate interest, which she abandoned
when she moved out of the family home.

           As
evidence of the above elements, Mary once again points to Jesus Jr.’s testimony
at the temporary injunction hearing and her own affidavit. The issue again is
whether Jesus Jr. knew his mother was suffering from senile dementia and was
thus somehow taking advantage of her because he knew his mother was incapable
of giving her consent. However, as noted above, Mary failed to produce any
evidence that at the time these transactions occurred, Jesus Jr. had any
knowledge that his mother suffered from senile dementia.

Conclusion

           Because
the trial court did not abuse its discretion in denying Mary’s motion to
continue the summary judgment hearing and because Mary failed to bring forth
more than a scintilla of probative evidence to raise a genuine issue of
material fact, we affirm the judgment of the trial court. 

 

Karen Angelini, Justice

 

 

 









[1]Because
we hold the trial court did not err in granting Jesus Patlan Jr.’s no-evidence
motion for summary judgment, we need not reach the issue of whether the trial
court should have granted the traditional motion for summary judgment.





[2]
The record does not reflect why Mary’s former attorney was no longer an
attorney in this case.





[3]
The record does not reflect why Mary’s current attorneys filed a petition in
district court to take a “presuit” deposition of Jesus Jr. when Mary had
already filed a lawsuit in probate court against Jesus Jr. At oral argument,
one of Mary’s current attorneys admitted that she had been aware of the
previous lawsuit filed by Mary against Jesus Jr. in the probate court and the
injunction hearing in that lawsuit. However, Mary’s current attorney claimed to
have been unaware of what specific documents had been filed or exchanged in
that lawsuit because Mary’s previous attorney had not given Mary his file.





[4]
After taking the deposition, Mary’s attorneys determined that Otilia did not
have a claim against the bank.





[5]
A hearing was held on April 1st on the motion to dismiss, but there is no
reporter’s record of the hearing. At the motion to continue the summary judgment
hearing, Mary’s attorney makes reference to the trial court dismissing Mary’s
case on April 1st. Thus, it appears the trial court orally granted Jesus Jr.’s
motion to dismiss on April 1st, but did not sign the order dismissing the case
for want of prosecution until April 26, 2010, at which point the trial court
was aware that Mary had filed a new petition on April 5th. 





[6]
Although there is a reporter’s record of the hearing on the motion for
continuance, there is no reporter’s record of the summary judgment hearing,
which was held much later.





[7]
Dr. Cantu was Otilia’s treating doctor and Mary’s employer.





[8]
Mary’s attorneys did not indicate in Mary’s motion for continuance why they
would need additional time to obtain their client’s affidavit.





[9]
The hearing on the motion for continuance was held on May 19, 2010. The record
request to Broadway Bank was filed in the district clerk’s office on May 20,
2010. And, the request indicates that it was sent to Broadway Bank on May 18th,
the day before the hearing.





[10]
We further note that although not briefed, Mary’s attorney raised the issue
during oral argument that she was prevented from fully deposing Jesus Jr. by
the trial court’s presuit deposition order of September 18, 2009, which limited
the scope of any deposition of Jesus Jr. to the facts and circumstances
surrounding the signature cards relating to the account made the basis of the
suit. However, there is nothing in the record to reflect that Mary was
prevented from fully taking Jesus Jr.’s deposition before the trial court’s
order of September 18, 2009, nor is there any indication that Mary ever went
back to the trial court after September 18, 2009, to request that the scope of
Jesus Jr.’s deposition be expanded. 





[11]
We note that Jesus Jr. filed written objections to Mary’s affidavit, arguing
that it was based on hearsay and speculation, and constituted improper expert
testimony. However, there is nothing in the record to reflect that Jesus Jr.
obtained a ruling on his objections. Nevertheless, we note that Jesus Jr. did
not need to object or obtain a ruling on any conclusory statements contained in
Mary’s affidavit because conclusory statements are insufficient to raise a fact
issue. See Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996); see
also Selz v. Friendly Chevrolet, Ltd., 152 S.W.3d 833, 837 (Tex.
App.—Dallas 2005, no pet.) (holding affidavit that is nothing more than a sworn
statement of allegations in a pleading is conclusory and insufficient to create
a fact issue); Old Republic Sur. Co. v. Bonham State Bank, 172 S.W.3d
210, 217 (Tex. App.—Texarkana 2005, no pet.) (explaining that “statements of
legal conclusions amount to little more than the witness choosing sides on the
outcome of the case” and “affidavits containing conclusory statements unsupported
by facts are not competent summary judgment proof”).